## The Pennsylvania Railroad Co. *versus* Flanigan.

1. Where one acts in a dual capacity as agent, or servant for two separate employers, nothing less than clear proof of the consent of both employers, not merely to double service, but to the double compensation, will suffice to validate an express contract with the second employer.

2. Where one is either actually or constructively an agent for another, wages earned or profits acquired in the course of, or in connection with, his agency belong to his principal. He cannot therefore maintain an action against a second employer for services thus rendered during the time he was the agent of a former employer.

April 13th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Luzerne county:* Of January Term, 1886, No. 199.

*Assumpsit* by John Flanigan against the Pennsylvania Railroad Company to recover for services as ticket agent of said company. Pleas, *non-assumpsit,* payment with leave, etc.

The following are the facts as they appeared on the trial before WOODWARD, J.:

The North and West Branch Railroad Company completed a railroad from Catawissa to South Wilkesbarre in November, 1882. At that point a connection was made with the tracks of the Lehigh Valley Railroad, and a business arrangement was consummated for the use of about a mile of their track, together with the passenger and freight stations, yard sidings, &c. This arrangement was entered into by the Pennsylvania Railroad Company, who had become the lessees of the North and West Branch Company's line. The Pennsylvania Railroad Company agreed to pay the Lehigh Valley Company a certain sum per ton for all freight handled by their station agents, and five cents per passenger for every one going into or out of their station. These charges were to cover the sale of tickets by the Lehigh Valley agents for the Pennsylvania Company, and every other necessary service connected with receiving and handling freight and passengers. The Pennsylvania Railroad Company had no possession or control of any part of the terminal facilities, and had no agents or employés about the stations. All the work was done by the Lehigh Valley agents, and the compensation was made for all to that company.

The ticket agent at Wilkesbarre from November, 1882, to September 1st, 1884, was John Flanigan, the defendant in error. At the latter date he left the employ of the Lehigh Valley Company, and for the first time made a claim on the Pennsylvania Railroad Company for compensation as their agent,

and for selling their tickets at the Lehigh Valley station in Wilkesbarre during that period of time.   As the company had paid his employer for all services according to contract they objected to this demand, whereupon he brought suit, claiming $150 per month for his services.

To substantiate his claim he testified that in November, 1882, he received a printed circular announcing that he had been appointed agent of the Pennsylvania Railroad Company at Wilkesbarre, and that he had given a bond with sureties as agent.   That Mr. Alfred Walter, the superintendent of the North and West Branch Division of the Pennsylvania Railroad, had spoken to him at different times about handling the business of the company, and had promised to compensate him by a salary.   No amount was fixed.   That he was instructed that he would be called on to do the work by Mr. Mitchell, superintendent of the Lehigh Valley, and had done it for twenty-two months.   That he had never made a demand for pay until after his connection with the Lehigh Valley was dissolved.   He introduced a witness or two as to the value of the service rendered.

On the part of the defendant below Mr. Walter testified that he had spoken to Flanigan about selling Pennsylvania Railroad tickets, and told him that no arrangement had been completed between the companies as to the use of road and stations; that, when completed, if the Pennsylvania Railroad Company was to pay for the service of agents he would see that he was properly compensated, and that he had no other conversation with him.

Mr. Mitchell, division superintendent of the Lehigh Valley Railroad, the immediate superior of Mr. Flanigan, testified:

" I had a conversation with Mr. Flanigan, and told him that the tickets of the Pennsylvania Railroad Company were to be sold by him at the Lehigh Valley Railroad office."

No other instruction or permission was given by any one to Mr. Flanigan relative to the sale of the tickets.

He testified that he had no consent from his company to be employed by the Pennsylvania Railroad; also that the two roads are competitors for western travel.   The same fact was stated by Mr. Walter, as to passengers and freight, and was not denied.

The defendant presented, *inter alia*, the following points:

2. The plaintiff being in the employ of the Lehigh Valley Railroad as its ticket agent at the time of the making of the alleged contract of employment with the Pennsylvania Railroad Company, and during the entire time during which the alleged service was rendered, any compensation which might be payable for such service belongs to the Lehigh Valley Railroad Company, and this action cannot be maintained.

[Penn. R. R. Co. *v.* Flanigan.]

Answered as follows, viz.:

We cannot affirm that point. We cannot say that the plain-tiff was exclusively in the employ of the Lehigh Valley Rail-road Company, and was their agent alone, because that assumes a state of facts which the court has no right to assume, and which necessarily is for the jury. (First assignment of error.)

3. The uncontradicted evidence being that the duty of sell-ing the tickets, &c., of the defendant company was imposed upon him by the Lehigh Valley Railroad Company as part of his employment, the plaintiff could not make any binding con-tract for compensation for such duty, nor can he recover under such contract if he made any.

Answered as follows, viz.:

That point we decline to affirm. (Second assignment of error.)

4. That under the evidence of the plaintiff the Lehigh Val-ley Railroad and the Pennsylvania Railroad are competitors for passenger business, and their interests diverse at Wilkes-barre, and therefore the policy of the law will not permit a ticket agent of the Lehigh Valley Company to engage himself to her rival to sell tickets without the consent of his employer, and therefore the plaintiff cannot recover in this case.

Answered as follows, viz.:

We cannot affirm that point. We say the fact that these companies are competitors to some extent, for business, is not of itself sufficient to justify this point where there is evi-dence, as there is in this case, that there was knowledge of and implied consent on the part of the Lehigh Valley Com-pany to the action of the plaintiff. (Third assignment of error.)

5. Under all the evidence the plaintiff cannot recover in this action.

Answered as follows, viz.:

That point we decline to affirm. (Fourth assignment of error.)

The court charged, *inter alia*, as follows:

Furthermore, he was required to give and did give to the Pennsylvania Company a bond with sureties, in the sum of $3,000, conditioned for the faithful performance by him of his duties as ticket agent. (Fifth assignment of error.)

The sale of Pennsylvania tickets at the Lehigh Valley depot was with the permission and under the order of Mr. Mitchell, the superintendent of the Lehigh Valley Company. (Sixth assignment of error.)

Verdict for the plaintiff in the sum of $559.12 and judg-ment thereon, whereupon the defendant took this writ, assign-

[Penn. R. R. Co. v. Flanigan.]

ing for error the answer of the court to the defendant's points, and so much of the general charge as is above set out.

*H. W. Palmer* (*George Sanderson* with him), for plaintiff in error.

*J. V. Darling* (*E. P. Darling* with him), for Lehigh Valley Railroad Company, who joined in the paper book and in the argument with the plaintiff in error.

1. The profits, directly or indirectly made in the course of or in connection with his employment by a servant or agent, without the sanction of the master or principal, belong absolutely to the master or principal: Morrison *v.* Thompson, 9 L. R. Q. B., 484; Massey *v.* Davies, 2 Vesey, Jr., 317; Turnbull *v.* Gardner, 38 L. J. Ch. D., 331–334; Kimber *v.* Barber, 8 Law Rep. Ch., 56.

No credit will be allowed for the service of a bookkeeper employed by another firm, it being presumed that his time belonged to his employers. The recompense for any part not occupied in their work should belong to them: Beeson's Appeal (Fayette Co.), 2 Atlantic Rep., p, 683.

For the principle relied upon to sustain the second, third and fourth assignments we have the authority of Holy Writ: " No man can serve two masters; for he will hate the one and love the other, or else he will hold to the one and despise the other."

Says THOMPSON, C. J., in Everhart *v.* Searle, 71 Pa. St., 259, after quoting the passage: " All human experience sanctions the undoubted truth and purity of this philosophy, and it is received as a cardinal principle in every system of enlightened jurisprudence."

" No man can faithfully serve two masters," said the court in Utica Ins. Co. *v.* Toledo Ins. Co., 17 Barb., 134. To the same effect is Campbell *v.* Penn Life Ins. Co., 2 Wh., 55; Paley on Agency, 32.

" It matters not," it is said, p. 210 of Hare & Wallace Notes, 1 Lead. Cas. Eq., " that there was no fraud meditated and no injury done, the rule is not intended to be remedial of actual wrong, but preventive of the possibility of it." This was said of " any one who acts representatively or whose office is to advise or operate not for himself but for others."

*G. L. Halsey* (*E. S. Osborne* with him), for defendant in error.—The defendant in error, Mr. Flanigan, had certain specific duties to perform under his contract of employment with the Lehigh Valley Railroad Company. That is, he was

2 AMERMAN —36

[Penn. R. R. Co. *v.* Flanigan.]

to sell tickets for some thirteen trains between 7.30 o'clock in the morning and 8 o'clock in the evening, make report of his sales and account for the money to his employers derived from such sales. There is no evidence that the Lehigh Valley Railroad Company exclusively owned Mr. Flanigan's time between 7.30 o'clock in the morning and 8 o'clock in the evening. His testimony is the only testimony upon this question, and is: " The company never dictated hours to me; I used my own judgment in a great many of those things; I had a certain amount of work to do, and did it; the first train I usually sold tickets for was 7.30 in the morning, and the last train 8 o'clock in the evening."

After Mr. Flanigan had performed the certain amount of work under his contract then his obligation to the Lehigh Valley Railroad Company ceased, and it cannot with reason be maintained that he was then, under the law, prohibited from making other contracts for his labor, and receiving the emoluments resulting from the same.

But again, can the Pennsylvania Railroad Company, the plaintiff in error, at this late day deny our relation to them in this contention?

They said they had certain arrangements with the Lehigh Valley Railroad Company for handling their Wilkesbarre business. They paid a gross sum for all their terminal facilities. In other words, the Lehigh Valley Railroad Company was their Wilkesbarre ticket agent, and they have compensated them for the service. This arrangement existed during the time we served them, and for which we claim compensation in this case. They never made this fact known to us.

With this knowledge they asked us (1) to become their Wilkesbarre agent; (2) they, by circular in due form, appointed us their Wilkesbarre. agent, and sent us the property of the office,; (3) we accounted to them as their Wilkesbarre agent; (4) they required us to give bond, which we did, as their Wilkesbarre agent, and we were asked to renew the bond at the end of the first year as their Wilkesbarre agent, which we did; (5) they, time and again, promised to compensate us as their Wilkesbarre agent; (6) they finally settled with us as their late agent at Wilkesbarre. During all the time of our service with them they never made known to us that they had an arrangement with the Lehigh Valley Railroad Company, whereby, to all intents and purposes, they were their Wilkesbarre ticket agent. Can this defence, under these undisputed facts, be maintained at this late day? Are they not, under the law, estopped from making this defence? We believe they are, and cite to the court Bigelow on Estoppel, p. 473; Commonwealth *v.* Moetz, 10 Barr, 530; Sergeant's Executors *v.* Ewing, 6 Casey, 81.

Mr. Justice GREEN delivered the opinion of the court, May 24th, 1886.

After a most careful reading of all the testimony in this case we are obliged to say there is no evidence whatever of an express contract for the payment of wages or salary by the defendant to the plaintiff. The plaintiff himself being examined at great length does not state that the defendant, or any of its officers ever agreed to pay him any stipulated compensation for the service he rendered. It was undoubtedly true that he did sell tickets for the defendant, and was duly appointed passenger agent at Wilkesbarre by authority of the company. It is also true that he performed the service to which he was appointed, and it is not questioned that his performance was entirely faithful throughout. If there were nothing else in the case he would be entitled to compensation adequate to the service rendered upon the principle of a *quantum meruit*. But there are other material facts in evidence. During all the time of the service for which the present claim is made the plaintiff was in the employment of the Lehigh Valley Railroad Company as ticket agent at Wilkesbarre station. For that service he was paid a fixed monthly compensation, with privilege to sell tickets upon commission for certain western railroad companies. Being thus engaged, the Lehigh Valley Railroad Company, by contract with the Pennsylvania Railroad Company, agreed that the latter company might use the terminal facilities of the former at Wilkesbarre, including the passenger and freight stations, for the purposes of the North and West Branch Railroad Company, extending from South Wilkesbarre to Catawissa. This last named company was in the control of the Pennsylvania Railroad Company, and the terms of the arrangement with the Lehigh Valley Company included the sale of tickets over the North and West Branch and to points beyond, and the arrival and departure of passengers, and the landing and shipment of freight from the Wilkesbarre station of the Lehigh Valley Company. In consideration of these privileges the Pennsylvania Railroad Company agreed to pay the Lehigh Valley Company five cents for every passenger coming into or going out of the station, and a sum per ton for all freight handled. All the service was performed by the agents of the Lehigh Valley Company for the Pennsylvania Company. It was therefore undoubtedly the fact that compensation for the service was to be paid by the Pennsylvania Company to the Lehigh Valley Company. The Lehigh Valley Company directed their passenger agent, the plaintiff, to sell tickets for the Pennsylvania Company, and he did so. For selling tickets for the latter

company compensation is claimed, which, being refused, the present action is brought to recover it. There being no proof of an express contract to pay a specific compensation, the case was tried upon the theory of a *quantum meruit,* and evidence was given of the value of the service. The court left the case to the jury upon some testimony of the plaintiff that an agent of the defendant had promised him he should be paid for his service. Can a recovery be had in such circumstances?

There is no doubt that the Pennsylvania Company did appoint the plaintiff as their agent to sell tickets for them at this station, and that in pursuance of that appointment he acted for them and gave the usual bond given by passenger ticket-agents. It must also be conceded that the Lehigh Valley Company knew of this agency and assented to it, in fact directed the plaintiff to perform the service. Thus far the facts are without controversy, and if these facts alone constituted a right of recovery the verdict and judgment should stand.

But it is denied by the defendant that these facts alone confer a right to recover; the denial is based upon an allegation that the defendant contracted with the Lehigh Valley Company for the service of the plaintiff and paid that company for the service, that they never agreed with the plaintiff to pay him any compensation, that the Lehigh Valley Company never consented to the payment of compensation by the defendant to the plaintiff, and that it is against the policy of the law to allow the servant of one master to recover compensation for service rendered during the continuance of his employment, to another master.

The proof that the service in question was contracted for between the two companies is direct, positive, clear and entirely uncontradicted, and the compensation for the service was to be paid by the Pennsylvania Company to the Lehigh Valley Company. There is not a particle of evidence proving or tending to prove that the Lehigh Valley Company agreed that their agent, the plaintiff, should or might receive compensation for the service in question from the defendant, or that they had any knowledge that such compensation was to be paid. The only evidence tending to show that the defendant agreed to pay compensation to the plaintiff is found in the testimony of the plaintiff. Alfred Walter was the superintendent of the North and West Branch Company. The plaintiff testified to a conversation with him and was asked, "What was said? A. Mr. Walter promised on several occasions to pay me a salary. Q. Mr. Walter on several occasions promised to pay you a salary? A. Yes, sir. Q. When did you meet him again after this time, about the first of December? A. I saw

Mr. Walter probably on an average of once a month. Q. Covering what period? A. From the first of December, 1882, up to—well I seen him all the time during the time I was in their service: in regard to paying my salary, the last time I talked with him in regard to that was probably in April or May, 1884. Q. What did he say at these conversations? A. He had always held out to me that I would be paid a salary for the services performed."

With the exception of a repetition of the last answer on cross-examination, the foregoing is the whole and the only evidence of a contract by the defendant company to pay compensation to the plaintiff for his services. It will be seen at once that this is but the expression of a conclusion or opinion of the witness as to the effect of the words used in the conversation stated. The words themselves are not given nor the · substance of them. Whether they amounted to a " promise " would be for the jury to judge if they only knew what they were, but the plaintiff did not give them. So when he said that Mr. Walter " held out " to him that he would be paid he states nothing more than a conclusion of his own. The jury could not tell whether Mr. Walter really " held out " such an idea because they did not know the words he used.

This kind of evidence is altogether insufficient to prove an express promise to pay by the defendant. The circumstances and relations of the parties were such that nothing but distinct and clear words of an agreement or contract to pay can suffice to create such an obligation. No doubt if there was distinct proof of an actual promise to pay by the defendant, and satisfactory proof of the consent of the Lehigh Valley Company that their agent should receive such pay, the defendant would be legally bound to pay. But in our opinion nothing short of this will suffice.

The plaintiff being in the constant employment of the Lehigh Valley Company, and paid by them for his entire service, could not lawfully contract to render service during the same time to another company, especially a competing company as this one was, for compensation, without clear proof of the knowledge and consent of the Lehigh Valley Company both to the employment by the defendant and the payment of compensation. In Everhart v. Searle, 21 P. F. S., 256, we said, THOMPSON, C. J.: " The case before us is rather novel. It involves a question whether the same person may be an agent in a private transaction for both parties without the consent of both, so as to entitle him to compensation from both or either. We have the authority of Holy Writ for saying that 'no man can serve two masters; for either he will hate the one and love the other, or else he will hold to the one

and despise the other.' All human experience sanctions the undoubted truth and purity of this philosophy, and it is received as a cardinal principle in every system of enlightened jurisprudence."

In the same opinion it was further said: " There was plausibility and seeming force in the argument that as Flagg, the plaintiff's principal in the sale, was not injured by the arrangement with the defendant, there was nothing wrong in making that arrangement. This is specious, but not sound. The transaction is to be regarded as against the policy of the law, and not binding upon a party who has a right to object to it." This was said of one who had been appointed agent of one person to sell, and of another person to buy, the same property. He had made a positive agreement with the purchaser for an expressed consideration for making the purchase, but it was held he could not recover even upon his undoubted and absolute contract, because he was also the agent of the seller, under promise of compensation to sell the same property. The contract for payment of compensation by the purchaser was declared void as against the policy of the law. In Story on Agency, § 211, it is said : " Indeed it may be laid down as a general principle that in all cases where a person is either actually or constructively an agent for other persons all profits and advantages made by him in the business beyond his ordinary compensation are for the benefit of his employers." These principles are perfectly familiar, and are illustrated by a vast number of reported cases applied to many different relations of life. It seems very clear to us that they are entirely applicable to the present case. The plaintiff by his own testimony proved that he could sell tickets to competitive and distant points by either company's road. He was therefore subject to a divergent duty of fidelity to both if employed by both. Whether he would be more faithful to the interests of one than of the other might depend upon a secret disproportion of compensation received from one as against the other. But it is enough to know that absolute fidelity to one was inconsistent with the same fidelity to the other. In such a situation nothing less than clear proof of the consent of both employers, not merely to the double service, but to the double compensation, would suffice to validate an express contract with the second employer; much more would it be requisite to support an implied contract. As there was not the slightest evidence of the consent of the Lehigh Valley Company to their own paid servant becoming the paid servant of the defendant, the plaintiff's claim for compensation from the latter is fatally defective.

Judgment reversed.