Keystone Surgical Supply Manufacturing Company, to use of William Rennyson, Assignee for benefit of Creditors, Appellant, *v.* William T. Bate and Richard H. Bate, trading as W. T. Bate & Son.

*Corporation—Trespass—Wrongful dispossession of real estate—Province of court and jury—Contract—Director.*

In an action by the assignee of an insolvent corporation against two partners, the evidence showed that one of them who was a stockholder, director and one of the building committee of the corporation, entered into a contract, in the name of the partnership, with the corporation, to build a factory upon land owned by the other partner, the building when finished to be paid for by a mortgage for the contract price ; and, further, that the company paid the owner of the land the price agreed on in a contract made the same day. The evidence also tended to show that the partner who had agreed to construct the building, secretly sublet the contract at a much less sum to another person who, before the contract with the corporation was made, had offered to do the work for him at this less sum. The property was delivered to the corporation, which placed in the building valuable machinery, but refused to execute a mortgage for the full amount of the contract price. The partners thereupon ejected the corporation from the

possession of the building. *Held*, that plaintiff, under the evidence, had a right to go to the jury on the question of damages for a wrongful dispossession.

While the act of March 31, 1860, forbidding officers of a corporation to contract with the corporation to furnish supplies and materials, does not apply to contracts with private corporations, yet such contracts come under the common-law rule that they shall be closely scrutinized, and be in all respects fair and reasonable.

Argued Jan. 10, 1898. Appeal, No. 250, Jan. T., 1897, by plaintiff, from order of C. P. No. 1, Philadelphia Co., Dec. T., 1894, No. 119, refusing to take off nonsuit. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit for breach of contract. Before BRÉGY, J.

Plaintiff's statement of claim was as follows :

The plaintiff is a corporation, incorporated under the laws of the state of Pennsylvania, for the purpose of manufacturing and selling surgical supplies in the state of Pennsylvania and elsewhere. The business of the plaintiff was carried on actively and profitably at the store of said corporation, No. 213 South Eighth street, in the city of Philadelphia and state of Pennsylvania, and at its factory, Spring Mill, Montgomery county, state of Pennsylvania. From the time of its said incorporation, and continuously during the year 1894, the plaintiff continued an active and profitable business until September 7, 1894, when, by reason of the acts and conduct of the defendants as hereinafter set forth, it suffered great loss and damage and became embarrassed, and, while not actually insolvent, was rendered unable to immediately meet its obligations, and was forced to make an assignment to the above-named William Rennyson for the benefit of its creditors.

The defendants, at the time of the occurring of the causes of action hereinafter set forth, were, and still are, copartners, trading under the firm name of William T. Bate & Son, in the county of Montgomery, state of Pennsylvania, and engaged in the manufacture and sale of machinery, and the defendant, Richard H. Bate, was one of the copartners and a stockholder and managing director of the plaintiff corporation.

On the 16th day of March, A. D. 1894, a certain agreement in writing was made between the plaintiff and the defendants,

for the erection by the defendants of a certain brick building suitable for the business of the plaintiff, in the borough of Bridgeport, county of Montgomery, state of Pennsylvania, upon the lot or lots of ground purchased by the plaintiff from the said William T. Bate as hereinafter set forth, a copy of which said agreement is hereto attached, and is to be considered as a part of this statement. It was further provided, by virtue of a certain agreement bearing date the 16th day of March, 1894, under the hand and seal of the said William T. Bate and of the plaintiff, a copy of which said agreement in writing is attached to this statement, and is to be considered as a part thereof, that he, the said William T. Bate, would convey to the plaintiff certain lots of land situate in the borough of Bridgeport, Montgomery county, Pennsylvania, upon the completion of said building to be erected thereon. On the same date, contemporaneously with the execution of said agreement, the plaintiff paid the said William T. Bate the sum of $1,000 in cash, the full consideration of purchase money for said lots, in pursuance of the terms of said agreement. At the time of the execution of the said agreements and until the assignment on September 7, 1894, the defendant Richard H. Bate was, and continued to be, a stockholder and managing director of the plaintiff corporation, and for this and other reasons, clearly understood between the plaintiff and the defendants, it was expressly stated and declared by the defendant Richard H. Bate, acting for and in behalf of the defendants, to the plaintiff, before and at the time of the execution of said agreements, that the building or buildings to be erected in pursuance thereof would be built and erected by the defendants at cost price, so that the defendants, or either of them, should receive no personal profit whatsoever out of the transaction ; and the plaintiff avers that said agreements were signed and said sum of $1,000 in cash was paid over, as aforesaid, distinctly upon the faith and understanding of said express declaration so made by the defendants.

And the plaintiff avers that the defendants proceeded to erect and construct a certain brick building upon said lot or lots of ground, which they erected and constructed at a cost price of $3,900. The plaintiff, before the completion of said building, in the belief that said agreement for erecting said factory on

said lot would be performed, entered into occupation and possession thereof, to wit: about the middle of June, A. D. 1894, and placed in said building certain machinery and other goods and chattels at a cost to it of about $2,600, said machinery, goods and chattels being suitable and necessary for the purpose of carrying on the business of the plaintiff; that said occupation and possession of said building and purchase of said machinery, goods, and chattels, and putting same in place in said building were on the faith that defendants would carry out their contract as aforesaid, and were well known to the defendants, and fully acquiesced in by them at that time; that subsequently, to wit: on or about August 4, 1894, and while the plaintiff was still in occupation and possession of said building, and in the prosecution of its business on said premises, and before any settlement was had in pursuance of the contract of March 16, 1894, for the erection of said building, the defendants, in violation of said contract, endeavored to make a fraudulent settlement with the plaintiff, whereby they should receive the obligation of the plaintiff secured by mortgage, as aforesaid, to the extent of $5,500, with the intention of making an unlawful profit of about $1,600, in breach of the express agreement and understanding made, as aforesaid, at the time of the execution of said contract. Whereupon the plaintiff protested and remonstrated against such action, and endeavored in good faith and by reasonable methods to obtain from the defendants the proper performance of their contract.

While said negotiations and discussions were pending, and without any refusal on the part of the plaintiff to accept a deed for said ground and execute a mortgage of $5,500, as theretofore agreed upon, and while it was ready so to do rather than lose its investment as aforesaid, the defendants, on or about August 13, 1894, without just or reasonable cause, took possession of said building, by placing therein certain men in their employ and acting under their orders, and by locking the doors and other entrances thereto, and forcibly prevented the plaintiff from continuing its former peaceable possession of said building. By reason whereof they caused a total stoppage of the plaintiff's business.

Without any tender of a deed for said ground, and without any actual offer or request for said mortgage of $5,500, by the

defendants to the plaintiff, the defendants, without good reason, as aforesaid, and with the intention, as the plaintiff believes and expects to be able to prove, of obtaining unlawful control of the business, plant and assets of the plaintiff, took forcible possession of the said building, as aforesaid, and of the plaintiff's machinery, and has ever since continued to maintain said possession, and by their neglect and refusal to comply with the terms and conditions of said contract, viz : by refusing to furnish to plaintiff a suitable building as agreed on, and by said violent and unlawful action in rescinding and violating their contract with the plaintiff, as aforesaid, caused a loss of the whole value of the machinery, goods and chattels, which it had put, as aforesaid, into said building, as well as the money which it paid to said William T. Bate, and caused the financial embarrassment and ruin of the plaintiff, so that it became discredited and embarrassed in the prosecution of its business, and practically insolvent, so far as its ability to pay its running liabilities, and was forced to make an assignment, on September 7, 1894, for the benefit of its creditors, to William Rennyson, Esq., whereby its assets were sacrificed and its business destroyed.

The plaintiff avers that by reason of the violation of the agreements and contracts made by the defendants, as aforesaid, and of their unlawful acts in the premises, great loss and damage was caused to the plaintiff of the following nature and character, to wit:

1. The plaintiff lost the money it had paid on account of the purchase of said lot of ground, to wit: the sum of $1,000, inasmuch as it has never been able to obtain a conveyance of said lot, said building never having been completed for it, in accordance with the terms of said contract.

2. The plaintiff totally lost the machinery and other property which it had put in said building, as aforesaid, the value whereof was not less than three thousand dollars ($3,000).

3. That the plaintiff suffered great loss and damage to its business, by reason of having been forced into insolvency, as aforesaid, by the defendants, causing a damage to the plaintiff of not less than twenty thousand dollars ($20,000).

4. That by reason of said assignment and insolvency caused by the defendants, as aforesaid, the plaintiff was unable to collect numerous subscriptions for the stock of the plaintiff com-

pany, which could have been collected had the plaintiff been permitted by the defendants to continue its profitable business, as aforesaid, and that said stock subscriptions amounted to not less than four thousand two hundred dollars ($4,200), making altogether the sum of twenty-eight thousand two hundred dollars ($28,200), with interest from September 7, 1894, which the plaintiff claims and avers it has been damaged by the defendants in the premises, and to recover which the plaintiff has brought this suit.

The facts as they were developed at the trial appear by the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Lincoln L. Eyre* and *John G. Johnson*, for appellant.—The appellant was entitled to the possession of the lot and building.

Even though the appellees were entitled to receive a mortgage for the full amount of $5,500, this did not justify the eviction of the appellant.

Under the circumstances the appellees were not entitled to receive a mortgage for $5,500, but only for the actual costs of the building, about $4,000 : Act of March 31, 1860 ; Morawetz on Private Coporations, sec. 518 ; Spelling on Private Corporations, sec. 433 ; Wardell v. R. R., 103 U. S. 651 ; Hollingsworth on Contracts, 467 ; Bell v. Kennedy, 100 Pa. 221 ; Eberly v. Lehman, 100 Pa. 546 ; Bush v. Bender, 113 Pa. 90.

*William C. Hannis*, with him *James B. Holland*, for appellees.—There was no sufficient parol evidence offered to contradict or vary the terms of the two written contracts of March 16, 1894 : Wodock v. Robinson, 148 Pa. 503 ; Dickson v. Hartman Mfg. Co., 179 Pa. 343 ; Jessop v. Ivory, 158 Pa. 71 ; Baer's App., 127 Pa. 360 ; Ferguson v. Rafferty, 128 Pa. 337 ; Buckwalter Stove Co. v. Wood, 9 Montgomery Co. Ct. Rep. 30 ; Heydt v. Frey, 21 W. N. C. 265 ; Frey v. Heydt, 116 Pa. 601 ; Lalone v. United States, 164 U. S. 255 ; Thorne v. Warfflein, 100 Pa. 526 ; Miles v. Lewis, 115 Pa. 580 ; Callan v. Lukens, 89 Pa. 134 ; Parsons v. Adeler, 8 W. N. C. 72 ; Hill v.

Schucker, 1 Woodward, 251; Black v. Garrett, 2 Leg. Rec. Rep. 251.

When the corporation is represented in the transaction by a majority of the directors, a contract made with one of the directors is valid: 1 Morawetz on Private Corporations, sec. 527; U. S. Rolling Stock Co. v. Atlantic, etc., R. R. Co., 34 Ohio, 450; Duncomb v. New York, etc., R. R. Co., 88 N. Y. 1; Harts v. Brown, 77 Ill. 226; Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 588; Kitchen v. St. Louis, etc., Ry. Co., 69 Mo. 224; Chouteau v. Allen, 70 Mo. 338; Barnes v. Trenton Gas Light Co., 27 N. J. Eq. 33, 37; Combination Trust Co. v. Weed, 2 Fed. Rep. 24; Hubbard v. New York, etc., Investment Co., 14 Fed. Rep. 675.

The 66th and 67th sections of the act of March 31, 1860, entitled "An act to consolidate, revise and amend the penal laws of this commonwealth," can have no application under the facts of this case. It has never yet been applied to an officer of a private corporation: Milford Borough v. Milford Water Co., 124 Pa. 610; Trainer v. Wolfe, 140 Pa. 279; Com. v. Hilibish, 12 Pa. C. C. 25; Com. v. Hancock, 2 W. N. C. 557; Quinn v. Philadelphia, 4 W. N. C. 69.

The right to rescind a contract must be exercised as soon as any one of the events which give rise to the right happens or is known to the person entitled to it. Thus in the case of a transaction grounded on fraud, the party deceived must, on the discovery of the fraud, elect to rescind or to treat the transaction as a contract: Fry on Specific Performance of Contracts, sec. 703; Ayres v. Mitchell, 3 S. & M. 683; Lawrence v. Dale, 3 Johns. Ch. 23; McKay v. Carrington, 1 McLean, 50; Campbell v. Fleming, 1 A. & E. 40; Glassell v. Thomas, 3 Leigh, 113; Rinker v. Sharp, 5 Blackf. 185; Masson v. Bovet, 1 Denio, 69; Selway v. Fogg, 5 M. & W. 83; Saratoga, etc., R. R. v. Row, 24 Wend. 74; Miner v. Bradley, 22 Pick. 457; Voorhees v. Earl, 2 Hill, 292; Junkins v. Simpson, 14 Me. 364; Jennings v. Gage, 13 Ill. 610; Coolidge v. Brigham, 1 Metc. 550; Miner v. Bradley, 22 Pick. 457; Perley v. Balch, 23 Pick. 286; Norton v. Young, 3 Greenl. 30; Cushman v. Marshall, 21 Me. 122; Sumner v. Parker, 36 N. H. 449; Howard v. Turner, 155 Pa. 349.

When the goods have not yet left the actual possession of

the vendor, he has at common law at least a lien for the unpaid price, because he is always presumed to contract, unless the contract be expressed, on the condition and understanding that he is to receive the money when he parts with his goods: Benjamin on Sales, sec. 767; Van Amringe v. Morton, 4 Whart. 382; Critchfield v. Critchfield, 24 Pa. 100; Mather v. Trinity Church, 3 S. & R. 509.

OPINION BY MR. JUSTICE DEAN, October 17, 1898:

Perhaps the plaintiff had no case, but we are of opinion that neither the court below nor we, on at least one aspect of it, can determine that fact without the verdict of the jury. The plaintiff's assignor is a manufacturing corporation, of which the defendant, Richard H. Bate, was a stockholder and director. On March 16, 1894, the corporation entered into an agreement in writing with William T. Bate and Richard H. Bate, doing business as William T. Bate & Son, whereby Bate & Son agreed to construct for the company, on a tract of land in the borough of Bridgeport, Montgomery county, for the price of $5,500, a large building, according to plans and specifications already accepted. The company agreed to pay the consideration money upon completion of the building and on receiving title to the land, by delivering to Bate & Son a first mortgage upon the property in the sum of $5,500, payable in five years, interest at six per cent to be paid semi-annually, with the option to the mortgagor to pay it off at any time within the five years. William T. Bate, of Bate & Son, owned individually the land on which it was proposed to erect the buildings, so on the same day, by another agreement in writing, he contracted to sell to the company, for the consideration of $1,000, the land; the deed to be made as soon as the building was completed, at which time the consideration was to be paid in cash. The consideration was actually paid before the building was completed, about which time the company took possession of the building and placed in it valuable machinery. There was evidence tending to show, that the directors of the company had adopted the site and invited proposals for the erection of the building, and that at a meeting held on February 23, 1894, Richard H. Bate submitted propositions to construct the buildings, at three different prices, differing according to different details in the plans and quality

of material, one was for $5,300, one for $5,500 and the other for $6,500; further, that Bate represented to the directors that each of these prices would be the actual cost to him of the work; the contract was awarded to him as before noted at the price of $5,500. Bate was one of the building committee, and to him a contractor named Shoffner had offered to do the work for $3,874; Bate did not make this fact known to the building committee or to the board of directors, but immediately after his contract for $5,500, he subcontracted the same work to Shoffner for $4,040. On learning this fact, five or six months afterwards, the company refused to pay the consideration of $5,500, by the execution of the mortgage to Bate & Son in that amount, as it had contracted to do; thereupon, Bate & Son, without legal proceedings, ejected the company from the premises, and took possession, not only of the building, but of the machinery and other property. The company soon after became insolvent and made an assignment for benefit of creditors to this assignee, who brings this suit for damages, averring a readiness and willingness on part of company to perform its contract, and refusal of Bate & Son to perform theirs; and further, that while the company was in the lawful and peaceable possession of the premises, Bate & Son had unlawfully ejected it and wrongfully continued in possession, not only of the land, but of the company's machinery and fixtures. We do not say the facts alleged by appellant were clearly proved, but that evidence was given tending to prove them cannot be questioned; if it had been submitted to the jury and had been believed by them the plaintiff would have been entitled to a verdict.

If the company paid to Bate the $1,000 as alleged, it was the owner of the land, and had a right to demand the legal title from William T. Bate; a court of equity would have so decreed, and what ought to have been done, equity will consider as done. Then, we have the case of the owner of land on which a building has been erected, in the rightful possession of the premises, for there is no pretense that the possession taken by the company was not peaceable and with consent of the builders, wrongfully dispossessed. But, it is argued, the company did not, from the evidence, perform its contract with Bate & Son by a delivery or tender of the mortgage; admit it; but what right did that give building contractors to eject the owner

from the peaceable possession of his own premises? A mere breach of covenant confers no such remedy on the wronged party, and if the latter adopts it, he is liable to an action in damages.

But appellant offered evidence tending to show the building contract had been procured by falsehood and fraud on the part of the active member of the partnership, and therefore it was not bound to tender performance. Richard H. Bate was a director and stockholder and also one of the building committee, and acted in each capacity; then, as one of the firm of contractors, he dealt with the company. Appellant cites the act of March 31, 1860, to show that in no case can an officer of a corporation contract for himself with the corporation to furnish supplies or materials, etc. This act, obviously, has no application to contracts like unto this one with a private corporation, and it has been frequently so held. This transaction comes under the common-law rule, that all such transactions should be closely scrutinized, and it must be shown that the contract is in all respects fair and reasonable; for the parties do not deal at arms' length; a certain degree of confidence and trust is necessarily reposed in the officer by his corporation; his opinion, often, has great weight with his associates, and this gives him an advantage which he may use for his own interests, in disregard of his duty to the corporation. If it be true, as alleged, that Bate, being a director and member of the building committee, was entrusted along with his associates with the duty of procuring the erection of the buildings at the lowest price, then, after ascertaining from Shoffner that it could be erected for less than $4,000 represented to the directors that it could not be built at actual cost for less then $5,500, and thus secured the contract for his firm at a profit of nearly $1,500, that was a fraud upon the corporation which warranted the rescission of the contract, or it could waive the right to rescind and tender a mortgage for or pay the actual cost of the work performed by the unfaithful director. It was not in default when it refused to accede to the demand for a mortgage of $5,500; if it had complied, that, after knowledge, would have been a ratification of the fraudulent contract. Clearly, on appellant's evidence, if believed, the company could have defended in an action by Bate & Son on the contract to the amount it was damaged by

the fraud; but, in this action by the company, the statement is so meager and defective, even under the recent legislation, that we are not surprised that the learned judge of the court below was in doubt as to whether he could sustain a verdict on this branch of the case. But, as this may be cured by future amendment, we do not decide the point. As to the first, we think the plaintiff, on the pleadings as they stood, had a right to go to the jury on the question of damages for a wrongful dispossession. The decree is reversed, and a procedendo awarded.