# Quell v. Boyajian, Appellant.

*Assumpsit—Commissions—Mortgage loans—Evidence—Case for jury—Failure to make known source of loan—Effect.*

In an action of assumpsit to recover a commission alleged to have been earned in arranging mortgage loans, the case is for the jury and a verdict for the plaintiff will be sustained where the evidence was conflicting as to whether plaintiff's authority to secure the loans had been revoked prior to notice that the loans had been secured.

In such case it is immaterial that the plaintiff failed to inform the defendants of the source from which the loans were to come, when it appeared that defendant, upon being informed that the loans were available, requested delay and made no inquiry as to the source.

*Fiduciaries—Building and loan association—Officers—Loans—Commissions.*

One who is an officer of a building and loan association may not act in his official capacity as a trustee and agent of the corporation in authorizing a loan, and at the same time represent the borrower in procuring the loan, for which latter service he is to receive a commission.

The ancient principle that no man can serve two masters is still deeply rooted in the law. The law will not permit fiduciaries to place themselves in a position where they are open to the claims of conflicting duties or to the claims of duties conflicting with self interest. Nor is it a matter of consequence that there was no fraud meditated and no injury done. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it.

Argued December 14, 1926. Appeal No. 318, October T., 1926, by defendant from judgment of C. P. No. 3, Philadelphia County, December T., 1924, No. 12346, in the case of Albert Quell v. Michael Boyajian. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Assumpsit to recover commissions alleged to have been earned in arranging a mortgage loan. Before DAVIS, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $895 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, was the charge of the court, and refusal of defendant's motion for judgment non obstante veredicto.

*Paul Reilly,* for appellant.

*Yale L. Schekter,* for appellee.

OPINION BY HENDERSON, J., March 3, 1927:

The plaintiff obtained a judgment against the appellant on a claim for a commission alleged to have been earned in arranging a mortgage loan for the defendant. The loan was not effected, but the plaintiff asserts that he complied with a request of the defendant to place two mortgages, a first mortgage for $7000, and a second building and loan association mortgage for $6000; the commission to be 3% on the first mortgage, and 10% on the second. Evidence was offered to show that a party was found willing to take the first mortgage, and that the Ajax Building and Loan Association was ready to accept the second mortgage. The application for the loans was made in writing on November 17, 1924. On December 29, 1924, the plaintiff sent to the defendant a registered letter in which he stated that an arrangement had been made for the mortgages. This letter was received on December 30, 1924. On the same day the defendant wrote to the plaintiff that owing to his delay in procuring the loan, he revoked the application therefor. This notice the defendant alleged was sent to the plaintiff before he received the plaintiff's letter. Three defenses were presented: (1) that the plaintiff did not disclose to the defendant the names of the parties who were to provide the money; (2) that the authority to make the loan was revoked; (3) that with respect to the building and loan mortgage, the plaintiff was the president and a director of the corporation named by the plaintiff as

the corporation which would take the second mortgage, and that occupying such a relation to the association, he could not act as agent for the defendant in procuring the loan. The first two defenses may be considered together. Evidence was offered in behalf of the plaintiff to the effect that the defendant had notice about the middle of December that the arrangement was carried out so far as the placing of the loans was concerned and that he said it was all right, but that he would not be able "to settle just yet"; that he wanted to postpone the settlement on account of trouble he was having with his father. If the defendant sought an extension of time to complete the negotiation and expressed no interest in or desire for information with respect to the source or sources from which the loan was to come, we think it was not material that he was not then told who the lenders were. The evidence bearing on this branch of the case was submitted to the jury without objection as well as that relating to the notice of the plaintiff to the defendant that the loans were secured and also the evidence of revocation by the defendant of the application for the loan with the instruction that if the notice to the defendant by the plaintiff was prior to the revocation the latter would have no effect.

The defense with respect to the payment of a commission on account of the building and loan association loan was sufficiently raised in the affidavit of defense to put the plaintiff on notice. The question thus presented is whether one who is president and director of a building and loan association may act in his official capacity as a trustee and agent of the corporation in authorizing a loan and at the same time represent the borrower in procuring the loan for which latter service he is to receive a commission? It nowhere appears in the case that the directors of the corporation knew that a commission was to accrue to

the plaintiff for securing the loan. He testified that the officers of his company knew that part of his business was negotiating loans on which he received commissions, but it did not appear that the directors of the corporation approved the arrangement between the plaintiff and the defendant for the payment of the commission claimed or that they knew of such arrangement. The plaintiff appeared as a witness but did not testify with respect to the circumstances attending the granting of the loan by the association. He notified the defendant that he had procured the loan and was prepared to make settlement for the mortgages from which it may be inferred that he had some part in obtaining the consent of the company to take the second mortgage. The objection raised is not that there was any actual wrongdoing, but that the claim sought to be enforced is contrary to sound business principles and inconsistent with the good faith and loyalty to the company which is imposed on its officers and agents. The funds of a building and loan association are held in trust for the stockholders who generally speaking are investors of moderate amounts and who must necessarily commit their savings to the care of the officers of the association. The funds of the company are held for investment and the security of the investment depends on the value of the property with respect to the amount borrowed. It is manifest that the officers of the company sustain an important fiduciary relation. In acting for their principal, good faith requires that their interest should not be divided. The ancient principle that no man can serve two masters is still deeply rooted in the law. It has been held as a general rule that out of consideration of the weakness of human nature, the law will not permit real estate brokers and others occupying fiduciary relations to place themselves in a position where they are open to the claims of conflict-

ing duties or to the claims of duties conflicting with self-interest: Wilkinson v. McCullough, 196 Pa. 205. The same principle is upheld in a long catalog of cases, English and American. It was said in Exparte Bennett, 10 Vesey 381, that "he that is intrusted with the interests of others cannot be allowed to make the business an object of interest to himself, because from a frailty of nature one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interests at the expense of those for whom he is intrusted. The danger of temptation from the facility and advantage for wrongdoing which a particular situation affords does, out of the mere necessity, work a disqualification." This case was cited with approval in Everhart v. Searle, 71 Pa. 256. Nor is it a matter of consequence that there was no fraud meditated and no injury done. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it. While the case last cited applied to the sale of real estate, the principle involved is far reaching. A clear and illuminating discussion of the general subject is found in the opinion of Justice SADLER in Allegheny By-Product Coke Co. v. J. H. Hillman et al., 275 Pa. 191, in which many authorities are cited supporting the general doctrine. A director of a corporation is a trustee for the stockholders, and an obligation of his office is that he give his best judgment to the interests which he represents uninfluenced by pecuniary profit to himself: Bird Coal & Iron Co. v. Humes, 157 Pa. 278; Keystone surgical supply Mfg. Co. v. Bate, 187 Pa. 460. In discussing the rule of good faith and the obligation of a director of a corporation to have an eye single to the welfare of the interests which he represents, the court said in Porter v. Healy, 244 Pa. 437, "these general rules work no hardship to anyone, they simply mean that those intrusted with the management of a corpor-

ation must be above board, fair and honest with its stockholders in all matters concerning the common enterprise or its control, and that one so situated will not be permitted to 'derive any personal profit or advantage by reason of his position, distinct from his coshareholders.' " We held in Welch v. Harrigan, 79 Pa. Superior Ct. 138, that a claim for a commission by a director of a building and loan association for procuring a loan from the association could not be enforced although it appeared in the case that he had not voted for the loan. The action was based on an implied promise, but we think the principle under consideration applies as well to a written agreement. It will be noticed that the contract entered into by the defendant did not relate to a mortgage to be taken by the Ajax Building & Loan Association, but was a general undertaking of the plaintiff to secure a building and loan association mortgage. It seems evident that the opportunity of the president or a director of such company to make a personal profit out of the granting of a loan would have a tendency to influence the opinion of such officer with respect to the sufficiency of the security tendered. The fact that a commission of 3% was considered adequate in the case of the first mortgage, but that 10% was called for with respect to the second would indicate that greater risk attended the granting of the second loan or that greater effort was required to induce the association to accept the proposed security. If risk existed as to the second loan, greater caution was necessary in deciding on the advisibility of accepting it and this caution ought not to be weakened by the personal advantage of one authorized to approve the security. In thus considering the case, no reflection is made on the integrity of the plaintiff. The case involves principles of public policy and official duty which are promotive of commercial integrity and stability. On the facts disclosed, we re-

gard the contract with respect to a commission for procuring the loan from the building and loan association as contrary to law.

The judgment of the court is therefore modified by reducing the verdict to the claim for the commission due in procuring the first mortgage with interest thereon, for which amount the judgment is affirmed.