## POLLOCK v. MacELREE.

### No. 3227.

District Court, E. D. Pennsylvania.

Sept. 20, 1944.

962

Jacob K. Miller and B. D. Oliensis, both of Philadelphia, Pa. (for Levi, Mandel & Miller), for plaintiff.

Charles J. Biddle, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

The issue having come to trial on complaint and answer, and having heard the testimony of witnesses and arguments of counsel, I make the following

### Findings of Fact

1. During the period in which the present claim arose, plaintiff, Hugh A. Pollock, was Manager of the Automobile Division of the Crosley Corporation.

2. In his capacity as Manager of the Automobile Division of the Crosley Corporation the plaintiff had charge of the Company's dealings with its distributors.

3. Plaintiff's employment as Manager of the Automobile Division by the Crosley Corporation was a full-time position.

4. During the period in which the present claim arose, defendant W. Foxall MacElree was a distributor of automobiles of the Crosley Corporation.

5. Under its contract with the defendant and the general policy adopted toward its distributors, it was the obligation of the Crosley Corporation to treat all distributors alike so that no one should profit at the expense of another.

6. Plaintiff violated the terms of his employment by the Crosley Corporation by entering into an agreement with the defendant to share with the defendant the saving under the regular price, realized on purchases of Crosley automobiles from other distributors.

7. Plaintiff sought to use confidential information received by him as Manager of the Automobile Division of the Crosley Corporation relating to automobiles held by its distributors, for the purpose of making a secret profit for himself at the expense of those whom he was employed to serve.

8. The agreement between plaintiff and defendant set forth in Finding No. 6 was without the knowledge and consent of plaintiff's employer, the Crosley Corporation.

### Discussion

The plaintiff was employed as Manager of the Automobile Division of the Crosley Corporation, and was in charge of all the automobile distributors of the Company. His position was a full-time one and he was paid $7,000 a year plus a bonus. As part of his job as Manager it was his duty to help the distributors dispose of their cars. The defendant is one of the distributors and the Crosley Corporation's standard contract for the distributorship between the defendant and the Crosley Corporation was signed by the plaintiff on behalf of the Company. This contract calls attention to the mutual responsibilities of the distributor and Crosley and recites that "Crosley recognizes a sound dealer organization as essential to its own success. Under this agreement it is Crosley's aim not only to provide Distributor with good merchandise for resale, but also to have a fair, mutually helpful and friendly business association exist between Distributor and Crosley." It also provided that: "Crosley will from time to time advise Distributor of the prices of the vehicles and parts and accessories he buys from Crosley, and will furnish Schedules or Discount and Terms of Purchase to Distributor."

In the beginning of the year 1942 a "freezing" order was made by the United States Government so that new cars were unobtainable from Crosley. The distributors were, however, permitted to buy from one another. The result of the war situation was that in some parts of the country distributors, either because of local conditions or because of induction into military service, had automobiles on hand which they were pressed to unload, while in other places there were distributors who had very active markets and were greatly in need of cars to sell. The defendant belonged to the latter class. The policy of the Crosley Corporation was to help all of its distributors so that there would be the least possible disturbance to them, and undertook to help them shift their cars around where they could best be sold without loss to the distributors.

The plaintiff by reason of his position with the Company knew which distributors were "stuck" and had to sell, and those who wished to buy. Having this information the plaintiff entered into an agreement (subsequently reduced to a written memorandum) with the defendant whereby the plaintiff would make this information available to the defendant, and otherwise assist him, and "split fifty-fifty" on the savings effected on the defendant's purchases below the fixed price.

Sometime about June 1942, the defendant gave plaintiff a check for $1,045 for plaintiff's share in accordance with their aforesaid "private" agreement. The check, upon plaintiff's insistence, was made out to the order of cash and was dishonored by defendant. Plaintiff admitted on the witness stand that his reason for wanting the check made in this manner was because he desired to avoid the payment of income tax on this deal. The conclusion is inescapable that another factor was the plaintiff's realization that this was an unorthodox deal and his desire to keep the payments to him as clandestine as possible.

In this action the plaintiff is suing for an accounting by the defendant and he asserts that the arrangement with the defendant was made with the knowledge and approval of his (plaintiff's) superior, a Mr. Petrie, who has since deceased. Mr. Cosgrove, the Vice President of the Crosley Corporation, and Mr. Petrie's superior, testified (by deposition) that it was the Company's duty and wish to treat all distributors alike and that plaintiff was employed for this purpose and that it was strictly against the Company's rules for anyone to make any such secret profits, and when he learned of the deal between plaintiff and defendant he immediately discharged the plaintiff. The Court does not consider the plaintiff's testimony on that point worthy of credence and has therefore found as a fact that the profit sharing agreement was without the knowledge and consent of the plaintiff's employer.

■■■ Enough has been said to indicate the moral caliber of the plaintiff (and for that matter, that of the defendant). Obviously the Court should not assist the plaintiff to profit in this unconscionable transaction.

"A bargain for private advantage by a trustee, executor, administrator, guardian, agent, partner, or other fiduciary, in consideration of performing or promising to perform his duty as such fiduciary, or in consideration of refraining from performing or of promising to refrain from performing his duty, or any bargain that tends to induce a violation of a fiduciary's duty as such, is illegal except when effectively consented to by the beneficiary or principal of the fiduciary." Restatement of the Law of Contracts, Sec. 570.

Further:

"Unless otherwise agreed, an agent is subject to a duty to the principal not to use or to communicate information confidentially given him during the course of or on account of his agency or in violation of his duties as agent, in competition with or to the injury of his principal, on his own account or on behalf of another, although such information does not relate to the transaction in which he is then employed, unless the information is a matter of general knowledge." Restatement of the Law of Agency, Sec. 395; and:

"A bargain by an agent, even though acting as such without compensation, to receive without his principal's consent compensation for the performance of his agency is invalid." Williston on Contracts, Sec. 1737, Page 4905.

The cases are numerous which sustain the above cited principles: Wolfe v. International Re-Insurance Corporation, 2 Cir., 1934, 73 F.2d 267; Reilly v. Beekman, 2 Cir., 1928, 24 F.2d 791; Pennsylvania R. Co. v. Flanigan, 1886, 112 Pa. 558, 4 A. 364; Quell v. Boyajian, 1926, 90 Pa.Super. 386; Everhart v. Searle, 1872, 71 Pa. 256; Atlee v. Fink, 1881, 75 Mo. 100, 42 Am.Rep. 385; Auerbach v. Curie, 1907, 119 App. Div. 175, 104 N.Y.S. 233.

Accordingly, I state the following

Conclusions of Law

1. An employee may not receive a secret profit at the expense of those whom he is employed to serve.

■■■ 2. An employee is not entitled to receive any compensation for the performance of his duties other than that paid to him by his employer, except upon clear proof of the employer's consent, either express or implied.

■■■ 3. The contract between plaintiff and defendant is a contract for an illegal profit to which plaintiff was not entitled and the contract is therefore unenforceable.

4. Plaintiff's complaint must be dismissed.

5. Each party shall bear his own costs.

An order may be submitted in accordance with this opinion.