# David Mintz *v.* Henry J. Brock, Appellant.

*Equity—Accounts—Decree by consent.*

Where on a bill in equity for an account a decree is entered, by consent, that the defendant shall account, the court cannot be convicted of error in refusing to dismiss the bill.

*Trustees—Accounting—Burden of proof.*

Trustees should keep itemized books of account, and the burden is on them to sustain their accounts.

*Equity—Accounting—Counsel fees.*

Where a plaintiff in a bill in equity is compelled to resort to the filing of the bill to compel an accounting, the defendant will not be allowed credit in his account for counsel fees in the preparation and defense of the suit.

Argued Oct. 11, 1899. Appeal, No. 74, Oct. T., 1899, by defendant, from decree of C. P. Forest Co., Nov. T., 1898, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity for an account.

The facts appear by the opinion of LINDSEY, P. J., which was as follows:

The plaintiff, David Mintz, for a period of about ten years prior to July 20, 1896, was engaged in a general mercantile business at Marionville, Forest county, Pennsylvania. In connection with said mercantile business he was also engaged in manufacturing lumber, shingles and peeling and disposing of hemlock bark. On July 20, 1896, being somewhat financially embarrassed, he applied to the firm of Brock & Wiener in the city of Buffalo, for financial aid. He was advised by some member of the firm to procure counsel, and in pursuance of said advice, Henry L. Schwartz, Esq., of the firm of Baker, Schwartz & Dake, was consulted. Mr. Schwartz advised the plaintiff that some Pennsylvania attorney had better be sent for, and Eugene Mullin, Esq., of the firm of Mullin & Mullin, of Bradford, Pa., was telegraphed for and came to Buffalo. On consultation between the attorneys, Schwartz and Mullin, the plaintiff, David Mintz, and Henry J. Brock, the attorneys

advised the plaintiff to make a general assignment for the ben-- efit of his creditors of all his property, consisting, inter alia, of his mercantile business, the general merchandise and store buildings, three dwelling houses, one house and lot in the village of Marionville, a farm of 100 acres in Jenks township, Forest county, a quantity of lumber and bark, and two lots in the city of Buffalo, N. Y., to the said Henry J. Brock. The papers were drawn by said attorneys in the office of Baker, Schwartz & Dake, and later were duly executed and placed upon record in Forest county, Pa. The said Henry J. Brock took possession of all of the property embraced in said deed of assignment and thereafter carried on the general business of merchandising, manufacturing lumber and shingles and peeling of hemlock bark, very much as the plaintiff had theretofore done. It does not appear that he made any attempt to marshal the assets and wind up the said business. An effort was made by Mr. Schwartz, the attorney, during the fall of 1896, and again in the spring of 1897, to procure an extension by the creditors of David Mintz, and the last time did succeed in obtaining an extension by the principal creditors for a period of from eight months to a year. On June 24, 1897, Henry J. Brock, by an instrument in writing, conveyed all the assigned estate back to the plaintiff, David Mintz, and on the same day said Mintz, by an instrument in writing, transferred and conveyed all of his property, being the same property included in the deed of assignment, to the said Henry J. Brock. And on the same day an agreement in reference to the said property was entered into between the said Henry J. Brock and David Mintz, by the terms of which the said Henry J. Brock was to take possession of the property, and was to have the right to exercise his own judgment in the sale and disposition of the said property. He was also to employ David Mintz as salesman at his pleasure in the store at Marionville, at a weekly salary of $25.00. Said Brock was also, after paying in full the claims recited in paragraph three of said agreement, including his commission as assignee and the amount which he was compelled to pay attorneys employed by him as assignee, to transfer to said David Mintz all the property, either real or personal, which should remain or be in his possession after the payment of the amounts stated in said paragraph. Said David Mintz

agreed that he would not at any time question or attack the accounting of said party of the first part as assignee, and did thereby ratify the account made and filed by said Brock as assignee, and sell and dispose of the same as fast as he could in Forest county. It was further agreed by said Mintz "that if any surplus remains after the payment of the said claims and expenses of conducting said business and selling said property and goods hereafter purchased, that upon receipt or tender of the same he will forever discharge and release said party of the first part (Henry J. Brock) of any and all claims which he now has or which he may hereafter have against the party of the first part." On October 8, 1897, a further or supplemental agreement was made between the said parties by which the commissions or fees of said Brock as assignee were fixed at the sum of $2,250, and a promissory note for that amount was to be given by said Mintz to said Brock, dated July 20, 1897, payable in six months, with interest, and the salary of said Brock was fixed at $1,000 per year from July 20, 1897. The said David Mintz also made a settlement with Mr. Schwartz, of the firm of Baker, Schwartz & Dake, by which his fees as attorney for Henry J. Brock, assignee, were compromised and fixed at $1,000. Mr. Brock continued to carry on the business at Marionville very much in the same manner as he had done while assignee. He continued to buy goods from time to time for the store, sold and disposed of lumber, shingles, bark, etc. Mr. Mintz was continued as salesman in the store at the stipulated salary of $25.00 per week. Mr. Sherman was sent from Buffalo by Mr. Brock to keep the books, etc., and later Mr. L. B. Cohen took the place of said Sherman.

This bill was filed on or about November 10, 1898, by the said David Mintz, setting forth, inter alia, that he verily believes that the said Henry J. Brock has received money enough from the assets, covered by said agreement of June 24, 1897, in excess of the expenses of conducting the business, to pay all the just liabilities legally growing out of the performance of the said contract, and is therefore bound to reconvey the balance of the property mentioned in said agreement; and that if enough has not been realized by said Brock to entitle him to the reconveyance of said property under said agreement he is ready and willing and able to pay said Brock any sum remaining due him

upon a just and legal accounting; and setting forth further that he has repeatedly endeavored to obtain from said Brock an accounting of their affairs growing out of said agreement, and has demanded a settlement of the same, but has been wholly unable to reach any settlement or adjustment of their said business, etc.

An answer was filed by said Henry J. Brock alleging, inter alia, that he had from time to time furnished the plaintiff with statements of the affairs growing out of said agreement so far as he had been able; that the plaintiff had access at all times to the books of account of the said business and was familiar with the same, and had never been denied access to them, and that he was ready and willing to settle with the plaintiff, but that he had been unable to do so by reason of the fact that the plaintiff had not complied with the terms and provisions of the contract dated June 24, and had never offered so to do, etc.

Replication was duly filed and a partial hearing was had on November 21, 1898, at Tionesta, when by agreement of counsel for both parties a decree was entered by the court that the defendant, Henry J. Brock, file an account in the said court in accordance with the equity rule within thirty days from date, and on December 22, 1898, an account was filed by the defendant, in the court of common pleas of Forest county in compliance with said order. Exceptions were taken by plaintiff's counsel to certain items in said account, and a further and final hearing was had February 3, 1899, when evidence was produced for and against said items.

In the account filed by the defendant, in compliance with the order of court, he takes credit July 19, 1898, for an item paid Brock & Wiener, of $793.72, and one paid to H. J. Brock of $308.68, making a total of $1,102.40. The testimony of the defendant shows that these items were to cover goods sold by the Marionville store by Brock & Wiener and Henry J. Brock, and to cover $50.00 advanced by Brock & Wiener to Henry J. Brock, and postage stamps, stationery, telegrams and incidental items, amounting to $110.79; and also an item of $127.32, which the defendant claims Mintz owed to him as a balance on account from 1894 and 1895. The items of $110.75 and $127.32 were not put into the account of the defendant as filed. According to the testimony of Mr. Brock this item of $127.32

was disputed by Mintz, Mintz having claimed that he had paid it by a check sent to Brock. We are unable to allow this item, it being in dispute and growing out of an old account, and the evidence is not sufficient to justify us in allowing it. Neither do we see how the item of $110.79 can be allowed under the evidence. The items which go to make up this account have not been given, and the defendant acting in a trust capacity should have kept itemized accounts, and if they were kept on the books at Buffalo or on the books at Marionville they should have been produced, showing it. The defendant had competent and experienced bookkeepers, as shown by the testimony, and there seems to be no good reason why, in a case like this, where he is acting in a trust capacity, he should not have kept his books and accounts itemized so that they could have been produced. These two items are therefore not allowed. The books at Marionville, offered in evidence by the defendant, show the bill of goods furnished by Brock & Wiener and Henry J. Brock, as follows: March 25, 1898, $72.00; same date, $498.25; April 9, $10.50; May 6, $311. These items correspond with the testimony of Mr. Sherman, who also testifies that there was a discount of five per cent allowed on these bills, which would amount to $44.58; deducted from the sum total of the bills, $891.75, leaves $847.17. This amount deducted from the $1,102.40 leaves $225.23, which must be deducted from the credit side of the account. The defendant also takes credit in his account for certain items of discount and exchange, amounting in all to $1,451.49. It appears by the evidence of the defendant that this is made up of certain amounts paid as exchange on checks sent from the store at Marionville to him at Buffalo and for discounts that he paid his bank at Buffalo for loans of money which went into the business of the plaintiff. The plaintiff testifies that the defendant agreed that no exchange should be charged on checks. He testified that he desired that the account should be kept in a bank at Clarion, Pa., and that no exchange would be charged on checks or for collecting checks by the Clarion bank, and the defendant insisted that the account must be kept in Buffalo and that he would guarantee that no exchange would be charged on checks. The defendant disputes this, but the plaintiff is corroborated by Benjamin Levine.

As to the discounts, no statement is produced showing on what notes discounts were paid or when they were paid. As before stated, the defendant was acting in a trust capacity, and it was his duty to keep itemized books of accounts of all moneys paid which entered into the business relating to the trust. The defendant was notified some time before the final hearing of the objections to these discounts, but he does not produce the books showing the charges nor the items which go to make up the amount. In the absence of such proof we do not think this item should be allowed. Mr. Sherman testified that the items going to make up these several charges for discounts and exchange were taken by him from the bank book, and that statements were brought to Marionville and shown to the plaintiff, Mr. Mintz, and that they were then entered on the books in the amounts as given in the account filed after Mr. Mintz had seen the items. If there were such statements they ought to be produced now. And there is no evidence now. And there is no evidence to show their loss or that they have been searched for; neither is there any evidence to show that the bank book is lost and could not be produced. From the evidence of Mr. Mintz, corroborated by Mr. Levine, we are compelled to find that it was the agreement that no exchange should be charged upon checks. And how much of this sum, $1,451.49, was for exchange we do not know; it is not shown. The defendant having mingled the two together, and there being no evidence showing how much of the item was for discount and how much for exchange, the whole must be disallowed. There is one item of $67.50, which goes to make up the $1,451.49, which is explained by the defendant's testimony as being interest due on the note of $2,250 given by Mintz to Brock for his fees as assignee, and is therefore allowed. Deducting this from the $1,451.49 leaves $1,383.99, which must be deducted from the credit side of the defendant's account. The $250 paid by the defendant to I. Boasberg for his indorsement is the next item in dispute. We think, under the testimony of the defendant, that he was unable to obtain money at his bank to carry on the business pertaining to the Marionville business without an indorser, and being unable to obtain an indorser without a compensation, and having notified Mr. Mintz of the situation, this item ought to be allowed. If he had not paid this amount and obtained the

indorser it might have resulted in the winding up of Mintz's business, which would have been detrimental to him.

The plaintiff objects to the counsel fees paid by the defendant, and evidence was therefore taken at the final hearing on that subject.  And, as we understand, the only question raised now is in relation to the counsel fees since the filing of this bill.  Mr. Schwartz testifies that he has a charge against the defendant, $250 of which would be for assisting in preparing the defendant's answer to this bill, and preparation for the hearing, and attendance at Tionesta at the first hearing.  The allowance of counsel fees to the defendant for the defense in this case depends upon whether or not the plaintiff was obliged to resort to the filing of the bill to obtain his rights.  The plaintiff testifies that he became dissatisfied with the manner in which the defendant was conducting the business, and in July, 1898, visited the defendant at Buffalo, and endeavored to obtain from him a statement showing the situation of the business, and believing that the defendant had received enough from the business to pay off the indebtedness and reimburse himself for his expenditures.  That he endeavored for a number of days to get such a statement and did not succeed at that time, but finally obtained a statement on or about September 24, 1898, which is given in evidence and marked exhibit " A ; " which statement it is claimed did not afford him any satisfactory information as to the condition of the accounts between himself and Mr. Brock; that it was not made out in debit and credit form and he was therefore unable from the statement to determine the condition of affairs.  The plaintiff further testifies that he visited Mr. Brock in Buffalo again on October 15, 1898, and made further efforts to obtain a statement showing the exact condition of affairs between himself and Mr. Brock; that he remained there some eight days endeavoring to obtain such statement, but was not able to do so. He states that when he was there in July he told Mr. Brock that he was ready to settle with him, if he could get a settlement, and that he would try, or was going to try, to get the money to settle up with him if he owed him anything, and in October he stated that he told Mr. Brock that he had the money then to settle with him, if he owed anything, and demanded the statement, and Mr. Brock said he would not give him

any statement in writing; and failing to obtain the statement showing the condition of his affairs with Mr. Brock he filed this bill. Much of the testimony of the plaintiff is denied by Mr. Brock. But the plaintiff is in some respects corroborated by the testimony of Mr. Levine, and the fact remains that the statement which the defendant made for the plaintiff did not afford him the information which he was entitled to under the relation which the defendant sustained to the plaintiff by reason of the contract. We think the plaintiff was entitled to a statement from Mr. Brock at any time when he in good faith had reason to believe the amount received by Mr. Brock should be sufficient to reimburse him for his expenditures, or in case it did not, whenever the plaintiff was ready to pay Mr. Brock the amount due him and to indemnify him from any and all liabilities growing out of the said contract of June 24, 1897. And it appears quite clear from the testimony that frequent appeals to Mr. Brock for such an account was made by Mr. Mintz and that Mr. Brock failed to furnish such account or statement. That Mr. Mintz did not have the means at hand to ascertain the condition of affairs himself, or was unable to do so from the books kept at Marionville, is quite evident from the fact that the defendant is not now able to produce an itemized statement of a number of accounts, some of them quite large, for which he claims credit. We think, therefore, that the plaintiff was justified, if not compelled, to resort to the filing of this bill to compel an accounting. We therefore do not think that the defendant should be allowed counsel fees in the preparation and defense of this suit. We do not understand that the defendant has taken credit in the account filed for the $250 attorney fees claimed by Mr. Schwartz, but that he claims that it should be added to the credit side of said account. We therefore disallow the claim for any attorney fees relating to the preparation and trial of this case.

The views expressed above also require us to disallow the $52.50 charged for traveling and printing at Tionesta. This being in the account filed it must be deducted from the credit side of said account. The item of $64.78 paid to W. H. Watts for detective service, for which the defendant has taken credit in his account, we think not a proper charge against the plaintiff, and it must, therefore, be deducted from the credit side of the

account.    The $135 claimed to have been paid to Stambach for making out the statement, exhibit " A," is not a proper credit and must be deducted from the credit side of the account.    The defendant had competent bookkeepers employed and paid out of the Marionville business, and it was his duty, we think, to furnish a statement to the plaintiff free of expense.

In reference to the compensation of Frank Sherman, the bookkeeper, he testified that he drew out of the business at the rate of $70.00 per month, and the amount which he drew was charged to him upon the books at Marionville.    It further appears from the testimony that the defendant told the plaintiff that the salary of Mr. Sherman would be $70.00 a month.    It does not appear that the plaintiff raised any objection to that amount during the time it was being drawn and charged on the books, although he had notice of the fact.    We think the defendant should be allowed $70.00 per month for the services of Frank Sherman, although the evidence shows that a competent bookkeeper could probably have been obtained for the sum of $60.00.    But we think the defendant had a right to exercise a reasonable judgment in the employment of persons to represent him, and we do not think that $70.00 per month was an unreasonable salary for the services of Mr. Sherman.    As to the check of the Walton Oil Process Company, indorsed by Brock & Wiener, of $251, the testimony offered is not sufficient to justify us in our surcharging the defendant with this amount.    The amount of the defendant's expenditures, as shown by the credit side of his account, filed December 22, 1898, in this court, is $62,458.27 ; from which must be deducted the following items, as set forth in the foregoing opinion : $255.23, claimed to have been paid Brock & Wiener and H. J. Brock; $1,383.97, discount and exchange; $64.78, paid to Watts; $135, paid to Stambach; $52.50, expenses and printing at Tionesta; $60.33, being the difference between $70.00 a month allowed for the wages of Frank Sherman and the amount taken credit for in the account filed.    At $70.00 per month for the eighteen months which Mr. Sherman testified he was at Marionville, would amount to $1,260.    The amount in the account as filed is $1,320.33, being an excess of $60.33; making a total of $1,951.83. That deducted from the $62,458.44 leaves the credit side of the defendant's statement $60,506.44.    The total receipts by Brock,

as shown by the debtor side of his account, is $60,288.37, which would show a balance due Brock of $218.07. As to Mr. Brock's salary, we think it should be allowed up to the time when the plaintiff presented his petition setting forth that he had obtained releases from creditors releasing Mr. Brock from all liability to an amount which would reduce Mr. Brock's liability to less than $3,000, and offering to pay into court the sum of $3,000 to indemnify Mr. Brock. An order was made on that day, to wit: January 20, 1899, suspending Mr. Brock's salary from and after that day. His salary will be allowed to that date.

The requests of the defendant for findings of facts and conclusions of law, so far as they are in conflict with the views expressed above, are refused.

Upon payment by the plaintiff to the defendant of the amount due to him, in accordance with this opinion, and upon indemnifying the defendant against all liability growing out of this transaction, either by the releases obtained or otherwise, a decree will be entered in accordance with the prayer of plaintiff's bill.

Such a decree was subsequently entered by the court.

*Error assigned* was the decree of the court.

*Eugene Mullin*, with him *L. Rosensweig* and *T. F. & John P. Mullin*, for appellant.

*W. E. Rice*, with him *W. D. Hinckley*, for appellee.

PER CURIAM, October 23, 1899:

After answer filed, and while the court below was hearing testimony in support of the prayer for a preliminary injunction, etc., it was agreed by the parties that the defendant should file an account within thirty days, etc., and thereupon the following decree was entered by the court:

" November 12, 1898, this case came on to be heard, and on the agreement of counsel it is ordered, adjudged and decreed that the defendant account to the plaintiff for all moneys and proceeds growing out of the business relations between plaintiff and defendant as set forth in the pleadings in this case, and that an account be stated between the parties and the condition

of said accounts ascertained and a full accounting had between the parties; that the defendant file, under oath, within thirty days, a full and accurate statement of his accounts of said business transactions, in debtor and creditor form."·

The question of defendant's liability to account, etc., as prayed for in the bill was thus definitely settled by this decree, to which both parties consented. An account having been filed by the defendant within the specified time, exceptions thereto were filed, and the matter was so proceeded in that the cause came on for trial before the court below on February 3, 1899. At the trial the burden of sustaining his account was on the defendant. The result was unsatisfactory to him, and he therefore took this appeal.

A careful consideration of the record with special reference to the several assignments of error has not convinced us that any of the specifications should be sustained. The questions involved appear to have been fully considered by the learned president of the court below, and have been so satisfactorily disposed of by him that we deem it unnecessary to add anything to what he has said in support of his rulings. We find nothing in any of the specifications of error that requires either reversal or modification of the decree from which this appeal was taken. Neither of the specifications is sustained.

Decree affirmed and appeal dismissed at appellant's costs.