# Allegheny By-Product Coke Co. *v.* J. H. Hillman & Sons Co., Appellant.

*Equity—Findings of fact—Appeal.*

1. Findings of fact by a chancellor are to be sustained on appeal if the record discloses evidence justifying the conclusion reached.

*Equity—Practice, equity—Accounting—Pleading—Amendment.*

2. While it is the general rule that an accounting must be limited to the matters set forth in the pleadings, such rule will not be applied where the master was justified in considering other matters, under the conclusions of the court upon which the final decree was based; and this is particularly the case where the hearings were continued for a considerable time without objection on this score by defendant, and complaint was not made until argument on exceptions to the master's report, and then the court refused an application to remedy the alleged defect because it was of opinion that no such action was required.

3. In such case, the court could undoubtedly have then permitted an amendment, to sufficiently broaden the order which it had made.

*Principal and agent—Fraud—Accounting—Divisible contract—Burden of proof.*

4. The duty is upon the agent to account to his principal, but if he does so, then the burden of showing dishonesty, in any particular transaction, is upon him who asserts the wrong, and this is not to be left to mere conjecture.

5. Where a decree directing an agent to account is entered, it is the duty of the agent to file his statement, and as to such items complained of, which are not properly explained, the burden is on the agent to satisfy the master as to their correctness.

6. The agent stands in the capacity of a fiduciary to his principal, and, in all of the dealings the subject of the contract relationship, it is his duty to act with the utmost good faith and loyalty in the interests of his employer.

7. The agent must disclose all pertinent facts to his employer; must not speculate in the subject-matter of the contract; nor conduct a rival business; nor make secret profits.

8. Where the agent fails to account in full for sales actually made to others, he should be charged only with the secret profits which he made, with interest thereon, and the punishment for his lack of good faith should be limited to the loss of commissions on such transactions.

9. Where an agent appropriates property to his own use, he is liable for the market value of the article at the time of its delivery to him.

10. The fact that an agent is guilty of fraud and misconduct with reference to one transaction, does not defeat his right to compensation in regard to another transaction negotiated for the same principal, although he regularly was employed by the principal and the transactions are alike in nature, where by the contract of agency his compensation is to be computed separately with reference to each transaction.

11. Where a contract between a coke company and its agent, a corporation, provides that the coke shall be booked to the agent as if a purchaser, but the relation between them is really one of agency, and the agent fails to account for coke sold by it at prices higher than that at which it was charged, and also secretly retains freight differentials, and wage advances properly belonging to the principal, the agent will be obliged to account for such amounts retained, and will be deprived of commissions on the transactions tainted with fraud, but on other transactions, divisible by the contract, untainted with fraud, it will not be deprived of commissions.

12. In such case, where it appears that the president of the agent corporation is a large stockholder and a director of the coke company, his actions are subject to close scrutiny.

Argued May 23, 1922. Appeal, No. 101, Oct. T., 1922, by defendant, from decree of C. P. Allegheny Co., July T., 1919, No. 388, on bill in equity, in case of Allegheny

By-Product Coke Co. v. J. H. Hillman & Sons Co.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Decree modified and affirmed.

Bill in equity for an accounting.  Before SHAFER, P. J.

Exceptions to report of master, Henry J. Wasson, Esq.

Final decree for plaintiff.  Defendant appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Thomas Patterson,* of *Patterson, Crawford, Miller & Arensberg, Geo. E. Alter* and *Thomas Watson,* with them *Robert M. Steffler,* for appellant.—Neither under (a) the pleadings, nor (b) the preliminary decree for an accounting, nor (c) the general law of agency, without respect to the pleadings and decree, nor (d) the facts in the case, can the defendant be held liable for conversion: Seifert v. Rusch, 269 Pa. 53; Spangler Brewing Co. v. McHenry, 242 Pa. 522; Reilly v. Magee, 272 Pa. 406; Luther v. Luther, 216 Pa. 1; Rolshouse v. Wally, 272 Pa. 506; Robinson v. Fulton, 262 Pa. 265.

A plaintiff in an equity proceeding will not be given any greater or different relief than that prayed for in the bill and that alleged in the stating part of the bill: Massey v. Massey, 267 Pa. 239, 248; Caveny v. Curtis, 257 Pa. 575, 580; Isett v. Maclay, 265 Pa. 165, 170; Troutman's Est., 270 Pa. 310, 319; Rossmassler v. Spielberger, 270 Pa. 30, 39.

The master was in error in forfeiting defendant's commissions on all transactions whatsoever between plaintiff and defendant, including the commissions or sums equivalent to commissions figured in arriving at the prices to be paid for the coke covered by the purchase contracts exhibits C, D, E and F, and including the commissions in exhibit G, made after the expiration of the agency agreement: Reilly v. Magee, 272 Pa. 406; Sei-

fert v. Rusch, 269 Pa. 253; Spangler Brewing Co. v. McHenry, 242 Pa. 522; Luther v. Luther, 216 Pa. 1; Herzfelder v. McArthur & Co., Ltd., Transvaal Law Reports, 1908.

Regardless of the pleadings and the decree of court, defendant, under the circumstances of this case, cannot be held as a converter of any of the coke handled by it for plaintiff.

The shipments of foundry and domestic coke were separate shipments, each involved a separate sale of coke, and defendant, as agent, cannot as a matter of law be held to have converted the coke so sold, but can only be held to account and required to pay the amount by which in any transaction defendant as agent failed fully to account and pay for the coke shipped.

The so-called spot or excess furnace coke was applied by the defendant on contracts which it had with others and accounted for by paying to plaintiff the fair value of the coke and defendant should not be now required to account therefor, as the master required it to account, at the market price prevailing at the time of the respective shipments for standard Connellsville coke.

Defendant should not be required to account to plaintiff for freight differentials.

The wage advances for which the decree requires defendant to account are only those arising under the circumstances indicated by the court in its decree and received by defendant as a result of defendant's letter to the Buffalo Union Furnace Company January 9, 1917.

*George H. Calvert,* of *Calvert, Thompson & Wilson, David A. Reed,* of *Reed, Smith, Shaw & Beal,* with them *Tolles, Hogsett, Ginn & Morley, Clark McKercher, Gardner Abbott, Donald Thompson* and *George B. Berger,* for appellee.—Appellant is estopped from now questioning the sufficiency of the pleadings: Rossmassler v. Spielberger, 270 Pa. 30; Slemmer's App., 58 Pa. 155; Culver v. Thompson, 267 Pa. 400; Lockhart v.

Leeds, 195 U. S. 427; Fricke v. Quinn, 188 Pa. 474; Aultman's App., 98 Pa. 505; Dillon v. Hegarty, 222 Pa. 166; Hewitt v. Pub. Co., 271 Pa. 546.

Appellant, without the knowledge of appellee, used the coke to fill its own contracts,—in other words, sold it to itself,—and in such case the principal, by reason of the concealment and appropriation, may at its option demand a return of its property or of its value at the time: Rich v. Black & Baird, 173 Pa. 92; Robertson v. Chapman, 152 U. S. 673.

All spot or excess furnace coke shipped upon orders of defendant should be considered and treated as coke sold to defendant, and defendant should be required to account therefor at the market price prevailing at the time of the respective shipments: Landiss v. Scott, 32 Pa. 495; Weisenberger v. Huebner, 264 Pa. 316, 320; Wilson v. Blaine, 262 Pa. 367, 372; Mansfield v. Redding, 269 Pa. 357, 361; Hollis v. Hollis, 254 Pa. 90, 93; Saupp v. Streit, 258 Pa. 211, 214.

OPINION BY MR. JUSTICE SADLER, September 25, 1922:

Both plaintiff and defendant are Pennsylvania corporations, the former chartered in 1915, having for its purpose the manufacture and sale of coke and its by-products, and the latter authorized to buy, sell and deal in coal, coke, pig-iron and other materials, and act as brokers in the purchase and sale of these commodities.

The By-Products Company secured a plant in operation at Glassport, and began its relations with Hillman & Sons Company by entering into two contracts, one of which made provision for the supplying of such coal as might be necessary in its business, and the other appointed the defendant its exclusive sales agent, "to use its best efforts to sell the entire output of coke produced at the plant, at the best possible prices obtainable, and to exercise its best judgment as to when and for what length of time contracts should be made." This arrangement was to continue until March 31, 1918, and later,

on August 3d of that year, was extended by agreement to June 30, 1919. At the time of the execution of these contracts no individual was interested in both corporations. Subsequently, in 1916, J. H. Hillman, Jr., president of defendant company, became the owner of a considerable amount of the capital stock of the plaintiff, was later elected a director, and served in this capacity for a large part of the period covered by the dealings involved in the present case.

The product of the plaintiff company consisted largely of what was known as "furnace" coke, but a higher grade known as "foundry" was also prepared and sold. For a proper understanding of the many transactions which must be here considered, it is also to be noticed that an additional output in excess of that required to meet the terms of contracts for the furnace grade, was known as "excess or spot cash" coke. This was also sold by the defendant as agent.

When the first of plaintiff's supply was ready for shipment in 1915, the defendant assigned to it a portion of a contract to purchase at a fixed price which it had with the Buffalo Union Furnace Company, subject to a commission of 5%. This arrangement continued until June 30, 1916, though deliveries on like terms were made until August 24th following, and is evidenced by a paper referred to as "C" throughout these proceedings. The conduct of the agent under this agreement was not impeached, and the learned court below, as well as the master, found the plaintiff was not entitled to any account from the defendant by reason thereof. On October 6, 1916, contract "D" was executed, having for its purpose the disposition of the furnace output for the first six months of 1917. A third agreement, "E," made provision for the output for the balance of that year, and a fourth covered the first six months of 1918. Thereafter the sales were made through the agency of the defendant, but by contract "G," executed directly by seller and purchaser. After deliveries had ceased on the first contract, "C," and

prior to the commencement of shipments under contract "D," the defendant, as agent, sold a part of the product of plaintiff to the LaBelle Iron Works, and ordered deliveries to it. This transaction is not evidenced by any written agreement with the plaintiff, but shipments were directed to be made at a price considerably less than that which the buyer had agreed to pay to the defendant. A small portion of the tonnage during this period was sold to others by the agent at a much larger sum than that accounted for to the principal.

In the case of all the contracts mentioned, with the exception of the first, defendant, in addition to its commission, took advantage of the freight differential of fifteen or more cents per ton, and in certain cases, which will be particularly noticed hereafter, received not only the fixed price, but, under the terms of its contract, obtained allowances for wage advances, none of which were accounted for.

In 1919, the plaintiff discovered that its product had been sold for larger sums than had been paid to it by the agent, and thereupon it filed a bill, subsequently amended, praying for an accounting of all amounts improperly withheld from it. Answers were filed, and the position was assumed therein that, in the various transactions, the coke had been purchased by the defendant, and it was therefore at liberty to make resale at whatever prices it might see fit, accounting only for the sums named in the contracts with the plaintiff. The court below has found the relation was that of principal and agent, and the agreements executed, though calling the transactions sales, were merely put in this form to aid in the carrying out of the agency contract between the parties.

At the hearing, a necessity to account for some items was acknowledged, and, as a result, a decree was entered directing the master appointed to examine specially as to certain matters, leaving to him the measure of liability. The defendant submitted a statement show-

ing responsibility for $45,011.41, but this was excepted to, and a second account was filed, by which it was charged with $78,744.95. This being complained of as insufficient, the master took testimony, and, after a long examination, came to the conclusion that defendant should pay $509,141.48, subsequently increased by the court in banc, by the addition of interest, to $639,-020.56, which, with costs, was directed to be paid to the plaintiff. From the decree so entered this appeal has been taken, and the correctness of the determination, both as to facts and law, is in many instances challenged. The consideration of the questions raised must be approached by us in light of the numerous decisions holding that findings are to be sustained if the record discloses any evidence justifying the conclusions reached (McConville v. Ingham, 268 Pa. 507), and it is from this viewpoint that the voluminous record presented here has been examined.

Objection is first made to the inclusion in the final accounting of items which are not specifically referred to in the bill and the amendments thereto, or in the decree appointing the master. The operations of the defendant became apparent only when the testimony was taken. The court had directed an accounting for the sums received for the domestic and foundry coke, for that sold for cash, not included in the first four agreements, and for all disposed of under contract "G," as well as for sums received by reason of wage advances. It had likewise in its 11th conclusion left open, for subsequent determination, the measure of defendant's liability. Complaint is now made that under the circumstances there was no power to include a charge for cars of coke alleged to have been converted, nor sums received for freight differentials or commissions. It has been frequently held by this court that the accounting must be limited to the matters set forth in the pleadings (Luther v. Luther, 216 Pa. 1; Robinson v. Fulton, 262 Pa. 265; Seifert v. Rusch, 269 Pa. 53; Rolshouse v. Wally, 272

Pa. 506), and we have no intention of departing from the rule which has been so often declared. In the present case, however, the master would seem to have been justified, under the conclusions of the court below upon which the decree was based, in considering the matters brought to his attention. Further, the hearings continued for a considerable period of time without objection on this score by the defendant, and complaint does not seem to have been made until argument on exceptions to the report. The learned court below could undoubtedly have then permitted an amendment to sufficiently broaden its original decree, if deemed necessary: Rossmassler v. Spielberger, 270 Pa. 30. An application to remedy the possible defect was presented and refused because it was of the opinion no such action was required. Certainly, under the circumstances here appearing, the appellee should not be prejudiced where it used due diligence to correct the pleadings to conform with the facts as developed upon trial: Fisher v. Life Assn., 188 Pa. 1; Pittsburgh Forge & Iron Co. v. Dravo Contracting Co., 272 Pa. 118.

The conclusion finally reached by the master, and approved by the court in banc, directs an accounting in many transactions, which necessarily must be considered separately. It was found that various devices were used by the defendant company to secure for itself larger earnings than the 5% commission provided for in its contracts and orders for shipments, and in some instances it has been held that the coke received was diverted from the ordinary course of trade, and used by the defendant to carry out its agreements to sell at a low price. In such cases, it has been charged with the highest market value of the output at the time of its delivery. As a result of this, and other misconduct pointed out, commissions on all contracts were disallowed.

The first class of charges are those based upon the "freight differential" collected by the agent and not

paid to the plaintiff. The agreement of Hillman & Sons Company with the Buffalo Furnace Company called for Connellsville coke, and part of this and like subsequent orders were assigned to the By-Products Company, and deliveries made under contracts D, E and F. A difference in freight rates of fifteen cents,—after June 25, 1918, thirty cents,—in favor of the shipper accrued when the point of loading was Glassport. The defendant in its settlements with the furnace company secured the benefit of this sum, and failed to permit its principal to participate in this advantage to which the latter was entitled. Instead, the former claimed the right to withhold it, in addition to the commission of 5% provided for in the contract. Though it may have retained these amounts in good faith, yet without disclosure to the principal, and approval by it, the agent was bound to account for the rebates so received as part of the purchase price, and the finding of the master and court below that these differentials on contracts D, E and F must be returned, is a correct conclusion: 1 Mechem on Agency 1227.

The defendant has likewise been directed to repay the wage advances received by it from the purchaser of coke under contracts D, E and F. In these cases not only did the agent obtain more than it paid to the principal, —this difference being retained on the theory that it had made a purchase,—but by undisclosed arrangements with the buyers it secured from time to time larger prices, based on the increased cost of production. These sums properly belonged to the plaintiff, and the direction to account for the amount thereof was proper. In addition to the collections made on the three contracts referred to, it made use of the principal's coke to carry out what was known as the Rainey contract, under which the defendant was required to deliver in 1917 at a fixed price. Instead of so doing, it applied the plaintiff's product to its own purposes, and satisfied its obligation. Here again it received the benefit of wage advances properly payable to the plaintiff, and for these

sums it is likewise accountable. The same conclusion is to be reached as to the coke delivered to the Canadian Copper Company in April and May of 1917.

Another class of sales are those known as the LaBelle. After the expiration of the first arrangement with the Buffalo Furnace Company there was an interval of time when the shipments of plaintiff are not evidenced by written contract. During this period the defendant had an agreement with the LaBelle Furnace Company to furnish coke at $3 per ton. This fact it did not disclose to the principal, but directed it to make shipments to the buyer at the rate of $2.50, thus being relieved of responsibility. Here, the master properly held there was a conversion, and directed an accounting at the market price at the time of delivery, irrespective of the sum named in defendant's contract.

The same can be said of the disposal of the "spot or excess," being the product of plaintiff in addition to that required to fulfill contracts C, D, E and F, and which was sold by the defendant on written orders for shipment at arbitrary prices. Such coke was used by the defendant to carry out certain of its own low-price contracts, and it should be held to have converted this, and pay the market price at the time of delivery.

The only other sales subject to attack are those in which the foundry and domestic coke,—a higher grade of plaintiff's output,—was disposed of. In all, orders were given from 1915 to 1919 for 3,804 cars, representing 929 purchases. As far as the testimony discloses, 3,521 of these cars were properly accounted for. Appellant admits that 234 cars, including 49 bought by it, were not. The appellee claims this number should be at least 293. No evidence was produced to show any wrongful conduct in the great majority of the shipments, unless it is to be inferred from the general course of business. That the purpose of the defendant in all cases was fraudulent was deduced by the master from the transactions concerning which investigation was made. This was limited

to about 10% of the total number, and largely to the accounts where a discrepancy appeared upon their face. Many examined seem to have been unobjectionable, but some showed wrongdoing. From this testimony the master found that the agent concealed in certain cases the terms of the contract, of which it took advantage, that it reported fictitious sales, or at false prices, or did not report them at all, or made shipments to its own customers, in order to relieve itself of liability on low-price contracts. The various transactions have been set forth with great care, and as to those the conclusion reached is justified. On the theory that the evidence received shifted the burden to the defendant to demonstrate the fairness of each sale, all were held improper, though in many instances where testimony was taken no error was found. The duty is upon the agent to account, but if he does so, then the burden of showing dishonesty in any particular case is upon him who asserts the wrong. It is undoubtedly the duty of the agent to act fairly and to report fully to his principal, and as has been said (1 Mechem on Agency 1344), proof of incorrect returns justifies unfavorable inferences. Where a decree directing an accounting is entered, then the agent is required to file his statement, and as to such items complained of, which are not properly explained, the burden is on defendant to satisfy the master as to their correctness: Mintz v. Brock, 193 Pa. 294. For example, if in the account he claims certain of the property to have been his, proof of the title must be affirmatively shown: Wilson v. Pericat, 235 Pa. 412. But as said by Judge Penrose, in Trought's Est., 28 Pa. C. C. 302, the burden of proving the necessary facts to show wrongdoing on the part of the agent is upon the one asserting it, and this is not to be left to mere conjecture. See, also, 2 C. J. 930. As to the cars which the defendant purchased for itself, and as to those in which the master has found improper conduct in his 25th finding, and the amplification thereof, the defendant should be compelled to account for the market price

at the time of delivery. In the other transactions, the liability is for the actual prices received by the defendant and not transmitted.

The agent stands in the capacity of a fiduciary to his principal, and, in all of the dealings he must serve his employer with the utmost good faith and loyalty. It is his duty to make known all matters affecting transactions which may be of importance to the one for whom he acts: 2 C. J. 708; Persch v. Quiggle, 57 Pa. 247; Pratt v. Patterson, 112 Pa. 475. He must not speculate in the subject-matter of the agency (2 C. J. 695), conduct a rival business (Ewing's App., 4 Atl. 832), sell to himself (2 C. J. 700), make any secret profits (Graham v. Cummings, 208 Pa. 516; Kreise v. Cartledge, 262 Pa. 55; Yeaney v. Keck, 183 Pa. 532), or, without disclosing the fact, ask for compensation from both buyer and seller: Everhart v. Searle, 71 Pa. 256; Wilkinson v. McCullough, 196 Pa. 205. Particularly should his conduct be investigated where the agent stands in the peculiar relationship such as here appears. Hillman, the president of the defendant corporation, purchased an interest in the plaintiff company in the fall of 1916, and within a few months became a director. In making the subsequent contracts he was an active negotiator, and the actions of the agent were likewise controlled by him. There is no reason why an official of the corporation cannot be legally employed by it and receive compensation for his services, but his actions are subject to close scrutiny, and may be avoided if overreaching appears: Sotter v. Coatesville Boiler Works, 257 Pa. 411; Michigan Crown Fender Co. v. Welch (Mich.), 13 A. L. R. 896, 178 N. W. 684.

In charging the defendant with the market price of the product sold at the time of delivery, the master proceeds upon the theory that there was a conversion by the appropriation of the property to the use of the agent, and we agree that where this was done, or where the coke was in effect taken to carry out its low-price contracts,

the wrong is of such character as will justify the imposition of liability: 1 Mechem on Agency 917. But in the ordinary case, appearing in the record, where the failure was to account in full for the proceeds of sales actually made to others, or where a lack of due diligence in obtaining the best possible price is the foundation of the liability, the defendant should be charged only with any secret profits which it made, with interest thereon, and the punishment for its lack of good faith should be limited to the loss of commissions on purchases. Conversion implies an unauthorized dominion over property of another. The agent is given the legal control to make sale, and though he be negligent in the performance of his duties, and can be made to pay over the sum he receives, if larger than that remitted, and is responsible for damages in case of negligent conduct, yet he is not to be treated technically as a converter: 28 A. & E. Ency. of Law, 700, 707; 2 C. J. 720.

Where the agent has appropriated property to his own use, he is liable for the market value of the article at the time of its delivery to him (Pierce v. Beers, 190 Mass. 199, 76 N. E. 603), with interest: Jacoby v. Laussatt, 6 S. & R. 300. The ordinary measure, however, is the sum which has been unlawfully obtained by the unfaithful agent: Michigan Crown Fender Co. v. Welch (Mich.), supra; Kramer v. Winslow, 130 Pa. 484; Graham v. Cummings, 208 Pa. 516. A distinction must therefore be drawn in the present case between the various transactions, as above indicated.

One other complaint must be considered. The master, finding the conduct of the agent was dishonest in certain cases, concluded that it should be allowed no commissions on such sales, nor compensation in any of the other transactions, though actual wrongdoing was not affirmatively shown; and further directed that all sums which had been paid for services rendered should be returned. This conclusion rests on the theory that all of the transfers of coke are made as a result of the agency

contract known as "B," and therefore everything done by virtue of the relation thus established must be treated as one and the same. If this is correct, then the improper conduct shown in certain cases justifies the refusal of all compensation. "However, the fact that an agent is guilty of fraud, misconduct, etc., with reference to one transaction does not defeat his right to compensation in regard to another transaction negotiated for the same principal, although he is regularly employed by the principal and the transactions are like in nature, where by the contract of agency his compensation is computed separately with reference to each transaction": 2 C. J. 761; 2 Williston on Contracts 1934; 1 Mechem on Agency 1589. And this principle has been generally recognized in the authorities where the proposition has been considered: Nitedals Taendstikfabrik v. Bruster, 2 Ch. 671; Standard Sewing Machine Co. v. Jones, 260 Fed. 170; Handstitch Broom Sewing Machine Co. v. Blood, 47 Fed. 361; Merriman v. McCormick Harvester Machine Co., 96 Wis. 600, 71 N. W. 1050; Hippisley v. Knee Bros., 1 K. B. 1 (1905). To sustain the contrary position, the plaintiff relies upon Little v. Phipps, 208 Mass. 331, 91 N. E. 260, where an agent was denied compensation on two transactions, but the court there found that it was impossible to say what part of the compensation agreed upon was due in respect to the services faithfully performed by defendant, and therefore held no allowance could be made. Hansen v. Barnard, 270 Fed. 163, cited by appellee, was a case where an officer claimed the balance of salary due upon a specified voyage, and the balance of compensation was denied because of his fraudulent handling of accounts on the particular journey. It is not controlling of the present situation. Here, the various sales are represented by distinct contracts with purchasers or by shipping orders, and we see no reason why the transactions should not be treated as divisible and compensation allowed for those not shown to be unfair, and denied where misconduct ap-

pears, including those sales where freight differentials and wage advances were improperly retained by the agent.

It follows from what has been said that the decree entered must be modified as to the charges for foundry and domestic coke,—item one of the account stated,—and as to commissions,—item fifteen,—and the record is remitted to the court below to make the necessary modifications as indicated in this opinion. The assignments of error raising other questions are overruled; the costs of this appeal to be paid by appellant.

Motion for reargument.

PER CURIAM, October 20, 1922:

The appellant has asked for a reargument in this case. Upon due consideration, we are of opinion that the application should be refused.

The order already filed sufficiently indicates the liability to be imposed upon the defendant in the case of sales referred to in finding 25, and the amplification thereof. Where it appears there was a direct conversion to the use of defendant, or the coke of plaintiff was diverted to the carrying out of the lower-priced contracts of the agent, the latter is properly chargeable with the market value at the time of delivery, without allowance of any commissions for its services. In the other cases, the sums actually received, and not accounted for, including freight differentials and wage advances, if any, are to be paid, with the loss of commissions in all cases where any misconduct was shown.

One matter has been called to our attention, which can be corrected by a modification of the order heretofore filed. In item nine of the account, approved by the court below, defendant was charged with wage advances received under contract F, entered into after the governmental order, fixing the price of coke at $6 per ton. We have found in the appeal between the same parties, to

No. 105, October Term, 1922, that this contract, between plaintiff and defendant, was fair, and should be sustained. The sum agreed to be paid to the plaintiff, including the freight differential, was $6.15, to be reduced, by the subtraction of the commission, to $5,85, the only amount with which the plaintiff is chargeable. It therefore follows that the profits made by defendant, which would include any wage advances received, cannot now be demanded by the principal, and the decree which has been entered should be altered accordingly. A like correction should be made as to the wage advances on shipments made under contract F during the first six months of 1918 and applied to carry out the Rainey contract. Here, the coke was paid for at the maximum price permitted by the government, and the liability of the agent was thus fixed.

The petition for reargument is dismissed, and the decree heretofore entered is modified so as to exclude therefrom such sums as have been charged for wage advances received under contract F, or on tonnage applied to the Rainey contract where delivered under the same agreement.