## Sloan v. Miller, Appellant.

*Principal and agent—Sale of real estate—Duty of agent to principal—Duty of disclosure.*

1. A fiduciary for the sale of property cannot act in the same capacity for the purchaser or interest himself to such extent that his conduct must necessarily be antagonistic to that of his principal.

2. If, however, acting in the utmost good faith, he discloses all the facts bearing on the sale, so that the best price possible may be secured, he fulfills the obligation resting on him.

3. The fact that one acts as agent for a principal in the sale of one property does not deny his right at the same time to hold another property under option, which is proposed to be sold with that of his principal, when the latter knows that fact.

4. There is no rule of law requiring an agent of a principal, who had performed all that he contracted for in bringing forth a purchaser who would buy and with whom the principal deals on his own terms, to communicate to his principal anything subsequently happening that might be an inducement to the other to repudiate the contract.

Argued October 16, 1924. Appeal, No. 30, Oct. T., 1924, by defendant, from judgment of C. P. Washington Co., Aug. T., 1920, No. 261, on verdict for plaintiff, in case of Tom P. Sloan v. Charles Miller. Before Mosch-zisker, C. J., Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Affirmed.

Assumpsit for commissions on sale of real estate. Before BROWNSON, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $21,953.05. Defendant appealed.

*Errors assigned* were various instructions, quoting record.

*John M. Freeman,* of *Watson & Freeman,* with him *A. M. Linn* and *Albert C. Hirsch,* for appellant.—The sale of the Miller and Hosack coal to J. H. Hillman was one transaction, and Sloan, having accepted commissions for services on the purchaser's side of the deal, cannot recover commissions for services on the vendor's side without showing an express contract by which both parties, after a full disclosure of the facts, consented to his receiving such commissions from both sides: Rice v. Davis, 136 Pa. 439; Finch v. Conrade, 154 Pa. 326; Penna. R. R. v. Flanigan, 112 Pa. 558; Marshall v. Reed, 32 Pa. Superior Ct. 60; Addison v. Wanamaker, 185 Pa. 536; Pratt v. Patterson, 112 Pa. 475; Allegheny By-Product Coke Co. v. Hillman, 275 Pa. 191.

Sloan violated his duty as agent in failing to disclose to Miller the fact that the A. R. Hamilton Company was a customer for and anxious to purchase Miller's coal, and this also bars him from a recovery.

The law is well settled that the question of an agent's breach of duty does not turn upon the actual loss or injury: Everhart v. Searle, 71 Pa. 256; Wilkinson v. McCullough, 196 Pa. 205.

*David M. McCloskey,* with him *Byron E. Tombaugh* and *Wiley, Marriner & Wiley,* for appellee.

OPINION BY MR. JUSTICE KEPHART, December 1, 1924:
This is an action for commissions on sale of land. Miller, appellant, owned 400 acres of coal land. Lo-

cated about three miles from this tract was another of
about 154 acres, owned by one Hosack, for which appel-
lee, Sloan, had an option. The latter piece was too small
in area, and badly located, to be worked as an independ-
ent operation. Appellee learned that the Lackawanna
Steel Company, owners of the Ellsworth Coal Company,
had 550 acres near the railroad, which it was willing to
trade for an equal area of coal contiguous to its main field.
He devised the plan of trading the Hosack coal, with
another tract, to make up the necessary acreage, to
the Lackawanna Company for the 550 acres next to the
railroad. For this purpose it was necessary to have the
combined area in the hands of one person. Accordingly
he approached Miller, appellant, with respect to the sale
of his coal. There is flat contradiction in the testimony
as to what took place then and later between appellant
and appellee, on almost all the essential features of the
case.

Appellee, Sloan, testified that, when he again talked
with Miller regarding the sale of his land, he was told,
if he could find a purchaser willing to pay $850 an acre,
he would be paid a commission. Appellant just as flatly
denies any such conversation, or that Sloan had any-
thing to do with selling his coal land, or that he acted for
him in any capacity. Sloan's testimony is supported in
part by Scott, who was with him on his second visit to
Miller, and who is an interested party in the consider-
ation for the transfer of the Hosack option and the com-
mission to be received as a result of this litigation. The
court below could do nothing less than submit this mat-
ter to the jury, although from the entire record the evi-
dence may have been more favorable to defendant,
Miller. However that may be, the credibility of the
witnesses was for them, and it was their duty to decide
the question of fact submitted. This they did, in ap-
pellee's favor.

Appellant urges that while the jury were the proper
persons to find the fact of agreement to pay a commis-

sion, nevertheless the conduct of Sloan as the agent of Miller was so reprehensible and in such direct conflict with his fidelity and obligation to his principal, the court must declare, as a matter of law, that he forfeited his right to commission. This, it is urged, arises from the fact that, at the time Sloan approached him relative to the sale of his coal, the former had an option on the Hosack, which he could not dispose of unless he had the Miller land or a piece equal in area. In order to effect an assignment of the option he must secure such land, and it must be at the best price possible. Miller's sold for $925 an acre, and Hosack's for the same price: Sloan, however, was paid $10,000 for the assignment of the option, and this in terms of acreage meant an increase in price to Miller of $65 per acre had Sloan, as his duty demanded, informed Miller of this transfer price. Sloan remained silent, and this, says appellant, was a breach of faith.

It is undoubtedly true, in the relations between principal and agent, everything which necessarily affects or would be of interest in the transaction pending must be made known by the agent. We have recently stated, in Allegheny By-Product Coke Co. v. J. H. Hillman & Sons Co., 275 Pa. 191, 203, that "the agent stands in the capacity of a fiduciary to his principal, and, in all of the dealings, he must serve his employer with the utmost good faith and loyalty. It is his duty to make known all matters affecting transactions which may be of importance to the one for whom he acts." This follows the principle that the fiduciary for the sale of property cannot act in the same capacity for the purchaser or interest himself therein to such an extent that his conduct must necessarily be antagonistic to that of his principal. The utmost good faith requires his disclosure of all facts bearing on the sale of the property so that the best price possible may be secured; the agent, when he has done this, fulfills the obligation resting on him. Here, looking at the case from appellant's point of view, we have

an agency coupled with an interest in another property of which the principal had full knowledge, the disposal of which was dependent on the sale of the principal's land. There is nothing in law which stamps such transaction with dishonesty, fraud or bad business. The fact that one acts as agent for a principal in the sale of property does not deny his right at the same time to hold another property under option, which is proposed to be sold with that of his principal, when the latter knows that fact. We need go no further in our analysis, because, under the pleadings and the proofs, the only thing Sloan contracted for was to bring to Miller a purchaser who would pay at least $850 for his coal. This he did. The question of price was a matter entirely for the owner of the property. Under these circumstances, it might be questionable whether Sloan would be compelled to tell Miller of either the option or transfer price. This, for the additional reason that the properties were not contiguous, but some distance apart, and many elements might be present affecting price. Notwithstanding this discussion, Sloan did inform Miller of the Hosack option and the price Hosack was to receive for the land. He did not inform Miller of the $10,000 paid in addition thereto for its transfer, though the latter, knowing of the transfer, could have made inquiry as to such price. The jury has found all that was required of Sloan was to find a purchaser for Miller. There was no duty resting on the former to advise the latter concerning the price about to be received for turning over the option to the common purchaser, Hillman, who would make the trade with the Lackawanna Company. Miller knew all about the option, and that the option was to be sold about the same time his coal was sold. If he had wanted to become acquainted with the price, he could have inquired. Certainly, appellee says, there was no breach of good faith from Sloan to Miller. Of course the answer to this, from Miller's standpoint, is that he did not ask because Sloan had no agency or participation in his contract of sale;

therefore the Hosack sale was of no interest to him, and from defendant's side of the case the answer would be complete, but unfortunately for him the jury found an agency. By the verdict it determined, not only that the contract for a reasonable commission was agreed on, but also that Sloan produced a purchaser, which fact was instrumental in bringing about the sale, and that Miller was fully advised of all matters in relation to the Hosack option.

We cannot therefore hold as a matter of law that, at the time the contract of employment was made, Sloan had an interest antagonistic to defendant (who reserved in himself full control of his property), of which no full disclosure was made, or that he acted in behalf of both buyer and seller, taking commissions from both sides. On the latter question, the evidence is flat that the $10,-000 was paid as a consideration for the transfer of the option, though this is denied; the jury, as a tryer of facts, has found against appellant. Nor can we hold it as a legal proposition that the price of transfer was concealed to the detriment of defendant, or that it was plaintiff's duty to acquaint Miller with that fact. The court below did all that could be asked on the questions when it submitted them to the jury for determination.

A further question presents itself. We take as a fact that appellee brought Miller and Hillman together in the sale and purchase of this land for subsequent trade to the Lackawanna interests. At the second meeting between Miller, Sloan and others, in Hillman's office, a tentative price of $950 an acre was reached: Miller's first price, as stated, was $850. Hillman was anxious to continue negotiations so that he might close with the Lackawanna interests and procure a trade of the property. This would necessitate the assurance from Miller that he would not discuss the question of sale with other persons. Accordingly he verbally agreed not to "talk about selling to anybody else" until their next meeting in a few days. During this intervening time the A. R.

Hamilton Company became interested in the purchase of the property. Representatives went on the ground and, after an examination, sought an interview with Miller, and requested Sloan to procure it. Sloan refused to do this because, as he states, it would have been a breach of faith with Hillman, whom he had brought in as a purchaser (that would be immaterial so far as his duty to Miller was concerned) and further he thought it would not be right to introduce Miller to a person who might tempt him to break faith with Hillman, by breaching his agreement not to discuss a sale with anyone else pending the next meeting.

Appellant urges that Sloan's duty was unrestricted: Miller was the one to pass judgment on whether or not he should break faith with Hillman, the proposed purchaser, and was the one to decide on the course of action to be followed. Despite the jury's finding to the contrary, appellant still claims it was Sloan's duty to acquaint him (Miller) with all the facts, particularly as there was another party in the field who might take the property, thus enabling Miller to sell at a better price. There is testimony that at the "next" meeting the price was reduced from $950 to $925 per acre; defendant denies this, however, and states that at both meetings the agreed price was $925 per acre. Appellant urges, had Sloan been acting in good faith toward him and not with a predominating desire of forcing the Hosack deal through at appellant's expense, Miller no doubt would have been able to receive at least the $65 per acre in addition to the figure per acre at which his land sold, had he been acquainted with the fact that another purchaser was in view.

The court below in substance held it would not decide as a question of law whether good faith required Sloan to supply Miller with the occasion, opportunity and inducement of practicing what might be conceded as bad faith with Hillman. There is no rule of law requiring an agent of a principal who has performed all that he

contracted for (by bringing forth a purchaser who would buy) and with whom the principal deals on his own terms, to communicate to his principal anything subsequently happening that might be an inducement to the other to repudiate the contract. Though we have held, in contests over commissions for the sale of land where it is charged the agent acted for buyer and seller, that "it matters not that no fraud was meditated, and no injury done. The rule is not intended to be remedial of actual wrong, but preventative of the possibility of it": Rice v. Davis, 136 Pa. 439, 443. It is significant that the price received was Miller's own price. The court below submitted this question to the jury to find whether, in fair dealing between men, this could be considered a breach of faith. Considering the limited extent of Sloan's engagement to Miller, the court below did not err in submitting this issue to the jury, under adequate instructions.

We have reviewed carefully all the assignments of error which relate to the charge of the court, and, after reading the entire record, we are of opinion they are without merit. This was the second trial; the learned judge was particularly careful to give defendant the benefit of every conclusion to be drawn from the evidence, and the assertion that some parts of the charge stressed the evidence for plaintiff, is not well founded. The charge was full and fair.

The assignments of error are overruled, and the judgment is affirmed.